WIRT ADAMS, STATE REVENUE AGENT, *v.* HERBERT T. SAUNDERS, ET AL.

[42 South. Rep., 602.]

TAX COLLECTORS. *Public agents. Liability on bonds.*

> A tax collector is liable on his official bond for moneys collected by him as taxes, although he was unauthorized to collect the same in whole or in part.

FROM the chancery court of Oktibbeha county.

HON. WILLIAM J. LAMB, Chancellor.

Adams, state revenue agent, the appellant, was complainant in the court below; Saunders and others, appellees, were defendants there. From a decree in favor of defendants, dismissing the bill of complaint, the complainant appealed to the supreme court.

The suit was by the state revenue agent, acting under Code 1892, ch. 126, against Saunders, ex-tax collector of Oktibbeha

county, and the sureties on his official bond, to recover for the county the sums of $1,010.80 and $1,360.31, alleged to have been collected from the taxpayers of Oktibbeha county in 1890 and 1891, respectively, by Saunders in his official capacity, and by him wrongfully withheld from the county, together with statutory damages. The defendant, Saunders, denied liability, claiming that he had made proper settlements with the county auditor for all amounts due by him to the county, and that the same had been duly approved and allowed; that as tax collector he was chargeable with the rate of taxation levied on the assessable property in the county, and that for each year mentioned he had paid into the county treasury such amounts so charged, less his commissions and allowances authorized by statute; and that the official representatives of the county, acting within the scope of their authority, had accepted the payments made in full satisfaction of defendant's liability; in short, that all obligations charged against him by law for moneys due to the county had been met by him in due season each year, and prompt payment made by him to the county treasurer. He admitted that his cash books and tax receipt stubs for the two years showed that he had collected from the taxpayers more money that he had paid over or accounted for to the county, but claimed that the discrepancy for each year resulted from errors in addition and other like mistakes which are apparent from the books of the office. He averred that if, after correction of errors, it should appear he had collected from the taxpayers of the county, by mistake, greater sums than were chargeable against them, he would be morally and legally bound to pay the excess to them, and not to the county. The sureties made the same defense as their principal.

The case was tried on an agreed statement of facts, the substance of which is as follows: The settlements for the years 1890 and 1891 made by Saunders, as tax collector, with

the county, consisted of his paying to the county treasurer all of the moneys with which he was charged by the clerk of the board of county supervisors, and which were legally chargeable against him on the books of the county auditor. He collected for the year 1890, exclusive of polls, a total sum of $32,718.93, of which he paid $6,543.58 to the state, $24,178.32 to the county, reserved for his statutory commissions as tax collector $985.23, and the balance of $1,010.80 was not accounted for by him either to the state or to the county. For the year 1891, exclusive of polls, he collected a total sum of $30,870.71, of which he paid $5,402.37 to the state, $22,868.18 to the county, reserved for his statutory commissions as tax collector $1,239.85, and the balance of $1,360.31 was not accounted for by him either to the state or to the county. The amounts thus paid over for the state and county constituted the full amounts with which he was charged, and the commissions reserved by him were those to which he was by law entitled. One-third of the amount unaccounted for for the year 1890 accrued as a result of collection of damages in the manner and form hereinafter recited in section 4, one-third as indicated in section 5, and one-third as indicated in section 6 of this agreed statement of facts. For the year 1891 the same thing was true, one-third of the sum mentioned as unaccounted for having accrued as a result of collection of damages in the manner and form recited in section 4; one-third as school tax mentioned in section 5, and one-third as recited in section 6 of the agreed statement. These sections read as follows:

"Fourth. It is further admitted and agreed that the said tax collector collected from one John Doe, an individual taxpayer of said county, the sum of $110 for taxes due for the year 1891; that he entered the said collection as $110 in the book of entries required by law to be kept for that purpose; that he issued to the said John Doe a tax receipt for $110, and retained a duplicate of said tax receipt, as required by law;

that the amount of taxes due from said John Doe for the fiscal
year of 1891 was $100, the said $100 being the amount due
upon the valuation of property with which the said John Doe was
assessed, and with which the said tax collector was charged by the
clerk of the board of supervisors; that the said tax collector paid
into the treasury of said state and of said county the sum of
$100, the said amount of taxes due upon said valuation, and
retained for himself as damages thereon the sum of $10; that
the collection was made after the 15th day of December of the
year in which the taxes were due; that the said $10 was not
entered in the book of entries, nor on the tax receipt of John
Doe, nor on the stub duplicate receipt retained, as damages,
and the fact that it was intended as damages was not disclosed
to the said John Doe, nor known by him to be such, but that
the same was voluntarily paid by the said John Doe to the said
tax collector as a part of the taxes of said Doe.

"Fifth. It is agreed and admitted, further: That Richard
Roe is a resident taxpayer of the city of Starkville, county of
Oktibbeha, and that all of the property of said Richard Roe
lies within the corporate limits of said city of Starkville. That
the said property is assessed at a valuation of $10,000. That
during the year 1891 the said city of Starkville constituted
what is known as a separate school district in said county.
That the board of supervisors of said county had no right to
levy or collect school taxes from property of persons situate
or residing in said school district. That for and during the
year 1891 the board of supervisors of said county made the
following tax levy, to wit: On account of common county,
$3\frac{1}{2}$ mills; on account of school fund, 3 mills; on account of
railroads, 4 mills; on account of bonds, 1 mill—making a
total levy of $11\frac{1}{2}$ mills. That the state levy was $3\frac{1}{2}$ mills,
making a total levy upon which said tax collector was to collect
for the state and county 15 mills. That this rate was to be col-
lected from all the citizens of Oktibbeha county, except from

those taxpayers whose property was located in the said separate school district. That from those taxpayers whose property was so located the rate upon which the tax collector was to collect was 15 mills less 3 mills, the amount levied for school purposes, or 12 mills; they not being liable for this school levy. That in making up the account with which the tax collector was charged the clerk charged the tax collector upon this item upon a valuation of $10,000 at the rate of 12 mills, making $120. That, when said tax collector came to collect the taxes from said Richard Roe, he failed to discriminate between him and the residents of the county at large, but collected taxes from him at the rate of 15 mills upon the said valuation of $10,000, thereby collecting $150. That this amount was voluntarily paid by the said Richard Roe, without compulsion on the part of the tax collector. That the said taxpayer did not disclose to the tax collector that this was an illegal tax, nor did he give the defendant tax collector notice that he would seek to recover, by suit or otherwise, the amount thus paid to the said tax collector. When the said tax collector came to settle with the proper officers for the state and county, he paid them only such an amount as he was charged with, to wit, $120, retaining the amount which he had wrongfully collected, to wit, $30, which amount, as stated, had not been charged to him. It is further agreed that the board of supervisiors had no right to levy this tax upon the property in the school district, and that it did not intend the levy to cover such property, and that it had no legal right to collect such taxes, nor had the sheriff the legal right or power to collect same.

"Sixth. It is agreed and admitted, further, that John Stiles during each of the years 1890 and 1891 was assessed upon the real and personal rolls of the said county in the aggregate amount of $10,000; that he was legally liable to the state for taxes thereon amounting to $40; that he was legally liable to the county for taxes thereon amounting to $160; that the said

tax collector collected from the said John Stiles on the 1st day of November in each of the said years the sum of $230, giving him therefor official tax receipts in the usual form; that the said collections were duly entered in full as made upon the tax collector's cash book; that the collector in his settlements paid over to the state thereon the sum of $40 and to the county the sum of $160 in each of the said years; that the collector did not account for or pay over to either the state or to the county the overcollection of $30 made by him in each of the said years; and that he now retains the said amounts."

The court having, upon the above statement of facts, decided in favor of defendants, and dismissed the bill, the revenue agent appealed to the supreme court.

*O. G. Johnston,* for appellant.

This action was brought by the state revenue agent under authority of Code, 1892, ch. 126, and under the act of 1894 amending the same, to compel the appellee to pay into the treasury of Oktibbeha county certain moneys collected by him in his official capacity as tax collector of the county in 1890 and 1891.

It is contended by the revenue agent that under the decision of *State* v. *Harney,* 57 Miss., 863, the tax collector of any county of the state is the legally constituted agent of the county, having full authority to collect from the taxpayers such taxes as may be due. It will doubtless be contended by the appellees that the *Harney case* is not analogous to this, and it is true the facts are not identical, but the principle laid down in the case cited will hold good in this case. Chief Justice GEORGE, in announcing in the *Harney case, supra,* that the tax collector is the agent of the county or state, as the case might be, in collecting money, distinctly stated that the money was received for the benefit of the tax collector's principal, and as the basis of his opinion cited Cooley on Taxation, 497.

Without the authority and the power of the county behind him the tax collector would be powerless to collect a cent from any taxpayer. It is the county, and not the man, that makes the collection in every instance. Not a cent would be paid to the tax collector unless the taxpayer so paying received in return an official receipt therefor, and it is apparent that it is the county, acting through a legally constituted agent, which in reality collects the county funds. The fact that the county exacts an official bond from the tax collector shows that the tax collector is merely an agent to make collections for the use and benefit of the county and state.

Since the tax collector, in making collections in his official capacity, is merely an agent, it must follow that when in his official capacity he exacts from any taxpayer of the county more than is legal, or when the taxpayer, believing in the authority of the tax collector, voluntarily pays him more than is legally due, the tax collector should certainly be required to pay the money thus collected to the county, inasmuch as the same has been received by him in a fiduciary capacity.

It is a very easy thing for a tax collector to add surreptitiously to the amount of each taxpayer's receipt a few cents more than is legally due to the county, and require the payment of the full amount of the receipt, and not one man in a thousand will discover the fraud or deception thus practiced upon him, or, if he does, the chances are that the amount thus taken from him will be too small to warrant employment of counsel to make recovery in case the tax collector refuses to correct the wrong. It is apparent that the great majority of the taxpayers of this state are largely at the mercy of the tax collectors, for many taxpayers are ignorant, and very few are sufficiently versed in mathematics to calculate the amount of taxes due from them to the county, especially when the levy is made up of sundry items, such as school tax, road tax, etc., and the amount of the levy is expressed in mills and fractions of a mill.

Assuming that the tax collector is the agent of the county, the question for determination is, whether he can be forced to turn over to the county the money collected in his official capacity. The answer may be found in the case of *Gillenwaters* v. *Miller,* 49 Miss., 150, where it is said: "A court of equity exacts fidelity and loyalty from agents and fiduciaries of every sort to their principles, and will strip them of all advantages obtained by a breach of trust and confidence. It will clothe them with the character and responsibilities of trustees as respects dealings and purchases which involve a breach of good faith; and will turn over, upon just terms, the fruits of such transactions, to the principal." Another reason for requiring a tax collector to pay to the county or state, as the case may be, all money collected by the tax collector, is that the county or state is liable to the taxpayer paying excess, for the repayment to him of the same. This is disputed by appellees, but is easily demonstrated.

Richard Roe pays to the tax collector $10 more than is due from him on account of county taxes, and receives therefor from the collector an official receipt for the whole amount thus paid. In a few months he discovers his mistake, and thereupon goes to the tax collector to have the excess refunded to him, and is by the tax collector informed that he, the collector, has settled with the county. The aforesaid Richard then presents the receipt to the board of supervisors, who, on examination resulting in a sufficient showing that the tax collector had collected too large an amount from him, and had subsequently paid the same over to the county, must allow a refund of the excess payment.

It is admitted in this case that a part of the money sought here to be recovered was collected by the appellee, Saunders, as a school tax from the citizens of the city of Starkville, and such collections were illegal, because Starkville constituted a separate school district, and the citizens who thus paid were

taxpayers living and having their taxable property in Stark-ville, and, under the law, not liable for the school tax levied by the county. As the county was not entitled to a school tax collected from the parties mentioned, appellees will doubtless contend that the state revenue agent, acting for the county, cannot recover the same or any part thereof from the tax collector or his sureties. It, however, makes no difference whether money collected by a tax collector in his official capacity is money which the county is or is not entitled to collect. The tax collector must turn over the same to the county, inasmuch as it was paid to him in his official position as an agent of the county.

The statute law in regard to the cash book and the payments by tax collectors was the same when appellee, Saunders, was in office as it is now. It was then his duty to "enter in a well-bound cash book, kept for the purpose, the date and number of each tax receipt issued by him, the name of the person paying taxes, and the amount paid, which entry shall be made at the time of issuing the receipt, and the amount of the aggregate of receipts entered on one page shall be shown and carried forward to the next page, and so on, so that the amount collected can be seen at any time by an inspection of the cash book. Each collector shall also enter in the cash book, in immediate connection with the entries of amounts received by him, the amount of his payment of taxes to the state and county treasurers, respectively, giving the date of each payment, so that it can be seen by reference to the cash book whether the payment made to the state and county treasuries *embraces all that he has collected,* less his commissions, and the cash book shall at all times be subject to the inspection of any state or county officer or agent, or any citizen of the state." Code 1880, § 517; brought forward as Code 1892, § 3808.

It is nowhere provided under the statute law that a tax collector shall pay into the various treasuries all that he is

*charged with,* but it is provided that he shall account for all that he *collects.* And such was the law in 1890 and 1891. The basis upon which liability is ascertained is the cash book of the collector. *Adams* v. *Conner,* 73 Miss., 425 (s.c., 19 South. Rep., 198).

Code 1880, § 548, and Laws 1888, p. 33, provide that if a collector fail to make a final report or to pay over any taxes, he shall pay damages at the rate of thirty per centum per annum thereon until the same be paid. This court has gone so far as to hold that it was not necessary for the pleadings to demand such damages, but that the damages are an incident to the debt. *State* v. *Lewenthal,* 55 Miss., 589.

It is said by appellees that if the law is held to be as contended by the revenue agent, tax collectors may be harassed by numerous suits by former taxpayers, based on the idea that the tax collector is liable to the taxpayer for excess collected, but in this case the question can hardly arise, because the taxpayers, as individuals, are barred by the statute of limitation. Moreover, as the payments were in practically all cases voluntarily, there is now no warrant for such suits. *Walters* v. *Mills,* 48 L. R. A., 503; *Tuttle* v. *Everett,* 51 Miss., 27; *Vicksburg* v. *Butler,* 56 Miss., 72; *Jackson* v. *Newman,* 59 Miss., 385.

It is contended by opposing counsel that a part of the money was collected as damages (although it is admitted that the same was not shown on the tax receipts to be damages), and that it was entered in the cash book as though it had been a regular tax payment, and that there is now no way to determine just what part of the collection was damages and what was legal tax, but it does not appear that any damage was due, for the agreed statement of facts shows that the taxes were not collected by "distress or otherwise." The tax collector was therefore entitled to no damages, hence the contention must fail. *Anderson* v. *Hawks,* 70 Miss., 639 (s.c., 12 South. Rep., 697);

*Miller* v. *Land Company,* 74 Miss., 110 (s.c., 20 South. Rep., 875).

*Carroll & Magruder, Alexander & Alexander,* and *George B. Power,* for appellees.

From the agreed statement of facts the court will observe that the total amount of funds involved in this controversy is divided into a three-fold classification. It is admitted that the appellee, Saunders, before the bill was filed, and in the usual course of business, had paid over to the state and to the county the entire amount due them upon the total real and personal assessments of the county at the legal levy or rate of taxation. It is also admitted that he collected from the individual taxpayers of the county the sums involved in this litigation, as shown by his cash books and the tax receipt stubs of the office; and of this over-collection, one-third arose from undisclosed damages received by the tax collector from individuals paying their taxes after the 15th day of December without distress; one-third from charging a school tax or levy upon property within the limits of a separate school district which was not so liable, and the remaining one-third from the retention by the tax collector of unexplained funds or collections, which, in fact, will upon final accounting prove to be errors and miscalculations. It is not admitted that there were any wrongful or wilful over-collections; and the record will show no misconduct or moral delinquency upon the part of the appellee. Upon the contrary, it is admitted that without concealment or secrecy in any way whatever, the entire transactions were regularly and formally entered upon the books and official accounts of the said tax collector.

We submit that the state revenue agent has no concern, under our statutes, with the funds here admitted to have been collected by the appellee, Saunders, while tax collector. If the appellee, Saunders, received from the individual taxpayers of the county more money than they legally owed the county, he is

liable to them for such amounts; and this liability would continue absolutely without reference to the result of this appeal. The matter would not be *res adjudicata* as to the individual taxpayers, because the revenue agent had collected this fund from the tax collector; and there would be nothing to protect him in that event from the double payment of the amounts. This contention is in no way affected by the question as to whether or not the individual taxpayers would be barred by the statute of limitations. With the operation or the non-operation of the statute of limitations the county is in no way concerned. That is a matter of personal privilege with the appellee, Saunders, at the utmost; and if the individual taxpayer has the right to sue, which must be conceded, neither the county nor the state has anything to do with such defense as may or may not be successfully asserted. If the county has the legal right to institute this proceeding, that right is in no degree involved in any question as to the statute of limitations. If the county had *originally* no right to bring the suit, the fact that the statute may have run can confer no right or power which did not exist before. If the county had the power to bring this suit one day after the tax collector received the over-collection, then the individual taxpayer could not have that right; and if the individual taxpayer at that time did have that right, we insist that neither logic nor statute gives to the county a concurrent right. That would be to establish a dual liability in all such cases; and if a dual liability, the scheme worked out to its ultimate basis might also with equal propriety justify proceedings both in the name of the state itself and in the name of the taxpayer's municipality. A right, then, which did not exist one day after the tax collector received the money, cannot exist now; and no hypercritical technicality as to the statute of limitations can modify this fundamental principle.

If the county recovers this money, what then? Confessedly it does not belong to the county; and the suit is not brought for

the use or benefit of the individuals entitled to the funds.
It would necessarily be placed in the county treasury, less the
twenty per cent commission of the revenue agent. What then?
Would the county proceed to pay it over to the individuals,
plus the commission paid to the revenue agent, thus imposing
upon the county the loss of that commission? Would the
county pay over to the individuals the net sum realized from
the cause? If this money is to be paid into the treasury and
then paid out again to the individuals under either plan, this
must be authorized by some statute; but the difficulty is that
no such statute exists. There is no statute authorizing its pay-
ment into the treasury, and there is no statute authorizing its
payment out of the treasury. Code 1892, § 320, requires that
the minutes of the board of supervisors shall for each allowance
show "the page and particular section of the law under which
such allowance is made;" and Code 1892, § 317, provides that
the board shall make no appropriation to an object not author-
ized by law.

As to the one-third of the fund involved here which arises
from the collection of undisclosed damages, the contention of
the revenue agent manifestly cannot be sustained. It is true
that Code 1892, § 2021, provides for the ten *per centum* dam-
ages as compensation to the tax collector; but that is a matter
between the collector and the individual. The cases cited for
the appellant, *Anderson* v. *Hawks,* 70 Miss., 639 (s.c., 12
South. Rep., 697), and *Miller* v. *Delta & Pine Land Co.,*
74 Miss., 110 (s.c., 20 South. Rep., 875), decide nothing more
than this: If the tax collector took no legal steps to enforce
payment of the delinquent taxes, then the taxpayer could have
refused to pay the unearned compensation; but when he did
pay it, whether disclosed or undisclosed, the collector is entitled
to retain it. Sections 517 and 548 of the code of 1880, in any
event, require the payment into the treasury of the state and
the county, respectively, of the amounts due them for taxes;
and by no possible method of construction can be applied to

damages of this character. The county is by no means the guardian of the citizen. Sections 517, 548, 549, 550 and 551, code of 1880, refer only to the *"taxes* collected for the state or county;" and suit is only authorized for the *"amount of taxes due,"* etc.

In *Boykin* v. *State,* 50 Miss., 375, the court says: "The 'amount of taxes due the state,' from the collector, was, in the first instance, the total of the state tax charged to him by the auditor." This rule announced by the court is the only legitimate basis for the settlement of taxes, either with the state or the county. In *State* v. *Lewenthal,* 55 Miss., 589, it is incidentally announced that "the amount of county taxes due and not paid over by the tax collector" is the subject of inquiry in these cases.

Our position here is not in conflict with the views of this court in the case of *Adams* v. *Conner,* 73 Miss., 425 (s.c., 19 South. Rep., 188). In that case, the basis of accounting which the revenue agent undertook to employ was sustained upon the distinct assumption that the result would be the same as if the legal and statutory method had been used. The case in hand permits no such assumption, for the record admits that the statutory and lawful method of accounting relieves the appellee, Saunders, from all liability, while the system which the appellant applies imposes upon him a shortage of approximately $2,700. The presumption would ordinarily be as stated in the *Conner case,* but we have here no room for the presumptions, but, on the contrary an unequivocal admission that absolutely differentiates the two cases.

The revenue agent relies upon the case of *Harney* v. *State,* 57 Miss., 863, which has no bearing whatever upon the questions involved in this appeal. In that instance the board of supervisors held their sessions in the wrong judicial district of the county; and this mistake upon their part produced the *irregularity of assessment* upon which Harney's retention of the taxes

was sought to be defended. In that case the court emphasized the fact that it was dealing merely with the "irregular execution of a power clearly vested in the board of supervisors," and that it was "not pretended that the taxes levied were illegal, or in excess of the amount authorized by law to be laid on the people and property of the county." The distinction is clear and manifest between an irregularity of assessment and the collection of funds, whether by accident or otherwise, in no way authorized and absolutely without legality. The collections for which the revenue agent sues were, in so far as the county is concerned, "wholly without authority." 27 Am. & Eng. Ency. Law (2d ed.), 806, 807. The case of *McNutt* v. *Lancaster,* 9 S. & M., 570, is in somewhat complicated attitude; but in the opinion of Chief Justice Sharkey the pertinent question is asked: "Can the state recover from an officer money which he received, if at all, by an act which is declared to be void, and prohibited under a heavy penalty?" He answers his question in unmistakable words: "I cannot see how she can do so, according to the principles of law. She may punish the offender, but cannot reap the profits of the offense."

We fully and freely concede that mere irregularity in the assessment, unconstitutionality in the levy, and the like will afford no protection whatever to the collector seeking to retain the funds secured thereby; but this well-established principle most certainly confers upon the county no right or power to sue for over-collections to which she can have no title. All of the cases recognize the right of the individual taxpayer to sue in such a case; and this necessarily demonstrates that the title is in him and not in the county. It is not a case of agency nor or irregularity in the assessment, but the county is confronted with an absolute barrier in its lack of title to the funds in litigation.

The court will further bear in mind that this suit is on behalf of the county, not the state. This naturally presents the

question, "How and by what process does the revenue agent ascertain that the alleged delinquency is due to the county rather than to the state?" The complainant undertakes to reply merely by the method of elimination: "The tax collector has settled with the state in full, therefore the amount must be due to the county." Why does a tax collected for school purposes from property within the separate school district, and therefore not subject to such assessment, belong to the county rather than to the state, or even to the municipality whose citizens have paid such unlawful tax? The same question may be asked as to the funds arising from the other sources outlined in the agreed statement of facts.

The court is thus confronted with the proposition that even if the title to the funds in controversy were not in the individual taxpayers, there is no rule of law and no statute, by which it could be ascertained that the title was in the county rather than the state or the municipality whose citizens were thus involved.

MAYES, J., delivered the opinion of the court *

In 27 Am. & Eng. Ency. Law (2d ed.), 800, citing numerous authorities, it is stated that a collector of taxes must pay over to the proper authorities all funds which come into his hands officially. So far as his duty to account is concerned, it is wholly immaterial as to whether the tax collected by him was a constitutional tax, or whether it was illegal, or void, or improperly collected. He can in no event question the right of the state, or other political division, under whose authority he derives his own power to act, to receive the same. We literally adopt the rule announced by the authority above quoted, supported, as it is is, by such sound principles of right, as the law applicable to this case. In the case of *Stale* v. *Harney*, 57 Miss., 886, in speaking of a tax collector, GEORGE, C. J., says: "He is treated as the agent of the state or county in collecting

* WHITFIELD, C. J., takes no part in the decision of this case, being disqualified.

the money, and as having received it for the benefit of his principal; and he will not be allowed to rely upon technical objections which might be made to the right of the state or county to it. The taxpayers who paid the money voluntarily are considered as having paid it to him for the use of the treasury; and he will not be permitted, having thus received it, to question the right of the state or county to it." It is true that the language of the court, quoted above, was addressed to the objection made that taxes were levied by the board of supervisors sitting in Jackson, instead of at the courthouse at Raymond, and that therefore the tax collector, not having the power to collect the taxes, by reason of this irregularity, could not be held accountable for the tax in a suit by the state to recover same; but the court held that no such defense would be tolerated when the collector was sued for the amount actually collected. The defense sought to be set up in this case is no less technical than that sought to be made in the *Harney case.* Defendant, Saunders, confesses that for the year 1890 he collected in his office the sum of $1,010.80 more than he was charged with by the county and state, and that in the year 1891 he collected the sum of $1,360.31 more than he was charged with. He admits that these sums were received by him in virtue of his authority as tax collector, and paid to him by the parties paying the amounts as either damage or tax, and yet insists that he has a right to withhold from the county these sums, because he had no authority under the law for the collection of same. When he admits the collection of the above amounts as tax, and it is shown that he was acting by virtue of his authority as tax collector, he is estopped by every principle of right to deny that the county is entitled to same. It would be contrary to public policy, contrary to both law and right, to hold that a tax collector, receiving money in virtue of his authority as such, could ever, under any circumstances, deny the right of the state or county to receive same, when the tax has been voluntarily paid

by taxpayers and the amount is still in his possession. If any authority has ever upheld this proposition, we have been unable to find it. Defendant Saunders had not discharged his obligation to his principal when he had paid all taxes charged to him; but he must go further, and pay over all money collected by him as taxes and voluntarily paid, it matters not from what source or under what circumstances he received it. It may be true that the parties paying the tax have a right to the return of same, but the record fails to show that any person is endeavoring to collect it from Saunders, or made protest at the time, and he cannot be allowed to hold this money, properly belonging to the county, merely because he fears he may hereafter be liable for it. That condition will be met when the occasion arises for its determination. The record shows that the state has been fully paid all its charges for the years in question, and, that being the case, the suit is properly maintainable for the county, and the county may be trusted to make the proper distribution of the fund; and, if it does not, persons representing it will be held accountable, but it can in no way prejudice appellee.

*Let the decree be reversed and remanded, with instructions to the court below to enter judgment against appellee and his bondsmen for the sum of $2,370.31, with such damages as are allowed by law, to be ascertained by an accounting.*

CALHOON, J. (concurring). I fully concur with Judge MAYES. The officer was acting not only *colore officii,* but the payment was made to him because demanded *virtute officii.* His official trust attached, when he received the money, to account for it, and it should have gone where the voluntary payer designed it to go. Neither the officer nor his bondsmen can justify his withholding it, nor can they find any protection in the position that his collection was unauthorized or that he might (though he did not) have refunded to the taxpayer before he made his report, which omitted it.