UNITED STATES FIDELITY & GUARANTY CO. v. YAZOO CITY.

[77 South. 152, Division A.]

MUNICIPAL CORPORATIONS. *City clerk. Liability on official bond.*

> Where a city ordinance required all moneys collected by the superintendent of a municipal street car line to be paid into the city depository, but in violation thereof the superintendent paid such collections to the city clerk who was only authorized to collect moneys due for city privilege tax licenses. In such case the city. clerk did not receive such moneys by virtue of his office or under color of his office, and the surety on his official bond was not liable for his defalcation, since he had no apparent authority to receive the money and before an act can be said to be done under color of office there must be an appearance of right under the law to do the act.

APPEAL from the chancery court of Yazoo county.
HON. O. B. TAYLOR, Chancellor.

Suit by Yazoo City against the United States Fidelity & Guaranty Company. From a decree for the city, the defendant appeals.

The facts are fully stated in the opinion of the court.

*Barbour & Henry,* for appellant.

It is settled law, in regard to which the authorities all agree, that a surety is entitled to stand upon the strict terms of his contract; to the extent, in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further. The obligation is not to be extended by implication beyond the terms of the contract, which contract is said to be *strictissimi juris. Lipscomb* v. *Postell,* 38 Miss. 476; *Greer* v. *Bush,* 57 Miss. 575; *Hall* v. *Lafayette,* 69 Miss. 529; *Lafayette* v. *Hall,* 68 Miss. 719; *Denico* v. *State,* 60 Miss. 949; *Robinson* v. *State,* 47 Miss. 423; *State* v. *Felton,* 59 Miss. 402.

With the proposition settled, and, in fact, conceded by opposing counsel, that the defendant surety company's liability is not to be extended by implication beyond the terms of the contract, which contract is *strictissimi juris,* we hardly see how it can be seriously controverted that reversal in this case must follow. McCormick, the city clerk, could only receive the money in his official capacity as clerk, as alleged in the bill, if the law imposed that duty upon him. If he received it in any other way there is no liability upon the surety. It makes no difference, that the city officials, by neglect or oversight or concurrence, permitted, knowingly, McCormick to handle the street car funds. This course of dealing could not change the law of the city, which alone fixed McCormick's official duties as clerk, and which alone is evidenced by the ordinances of the city, solemnly enacted by the city council. See *People* v. *Pennock,* 60 N. Y. App. 421, hereinafter argued at length.

With the fact clearly established by the ordinances offered by the defendant that the duty to handle the fund in question was expressly fixed by law upon Rivers, and there being no law requiring McCormick, or even authorizing McCormick, as city clerk, to handle this fund, we call the court's attention to certain conclusions of the controversy raised in this case.

The case of *Orton* v. *City of Lincoln,* 41 N. E. 159, decided by the supreme court of Illinois, is directly in point, and conclusive here. In that case, the city clerk gave bond for the faithful discharge of the duties of his office, etc. Under the ordinance, the clerk was required to collect certain license fees, not including money from dramshop licenses. By an ordinance, dramshops were required to pay a license, and they were to be paid into the city treasury. The city clerk, one Starkey, collected the dramshop fees, and defaulted. There was judgment against his official bondsmen for the shortage. The court held that the ordinance did not authorize the clerk to

collect the dramshop fees, and reversed the lower court; holding there was no liability. The court said:

"A surety is only to be held by the precise terms of his undertaking. His liability is *strictissimi juris* and cannot be extended by construction. . . . When they understood that the principal should account and pay over all money that came to his hands by virture of his office, the intendmant was that such money as should be received by the clerk in pursuance of law, and under the ordinances of the city, in his official capacity by virture of his office, was refered to, and not such money as he might elect to accept without right, and of which some other official was the legal recipient. Appellants were not sureties for moneys which, by virtue of the ordinances of the city, should have been paid the city treasuer. The mere officiousness of the clerk in the assumption of duties, or the negligence of other officers in the discharge of their duties, cannot extend the sureties' liability beyond the terms of their undertaking."

We also call the court's attention to the cases of *Van Valkenburg* v. *Patterson,* 47 N. J. L. 146; *People* v. *Pennock,* 60 N. Y. Appeals 421; *San Luis Obispo County* v. *Farnum,* 41 Cal. 445; *Wilson* v. *State (Kansas)* 72 Pac. 517; "Brandt on Suretyship & Guaranty, Par. 451; *Cressey* v. *Gierman et al,* 7 Minn. 398; *McKee* v. *Griffin,* 66 Ala. 211; *San Joes* v. *Welch,* 65 Cal. 358; *People* v. *Cobb (Cal.),* 51 Pac. 325; *Nolley et al* v. *Calloway County Court,* 11 Mo. 447; *People* v. *Pennock,* 60 N. Y. 421; *Saltenberry* v. *Loucks,* 8 La. Ann. 95.

A careful consideration of the principles declared by the decisions of our own court is equally conclusive here. Beginning as early as Walker's Report, page 260, this court has announced the principle in conformity with the principles set out in the cases reviewed above. *Matthews* v. *Montgomery,* 25 Miss. 150; *Furlong* v. *State,* 58 Miss. 717; *Brown* v. *Phillips,* 6 Smedes & Mar-

shall, 51; *Brown* v. *Mosley,* 11 Smedes & Marshall, 354; *Brooks Oil Company* v. *Weatherford,* 91 Miss. 501.

Attention is called to the text in Vol. 4 of the American & English Encyclopedia of Law, page 681. This text is an accurate and condensed statement of the substance of the repeated holdings of this court, and of the courts of various states. 25 A. & M. Encyclopedia of Law, 728. The foregoing text emphasizes the argument that the case of *Brooks Oil Company* v. *Weatherford,* 91 Miss. 501, *supra,* is strongly persuasive here.

We therefore respectfully submit that, in this case, as it appears without controversy that there was no authority in law for the street car superintendant, Rivers, to pay this money to the city clerk, and as it affirmatively appears without controversy, that the law imposed the duty upon Rivers to collect the money and pay it direct into the city treasury, a reversal must necessarily follow.

*Holmes & Holmes,* for appellee.

Counsel for appellant are mistaken in the assertion that it is conceded by us that the appellee's liability under its contract is to be strictly construed, and that its contract is *strictissimi juris.* On the contrary, we respectively submit that the surety company's contract under the law, as now well settled, is to be construed most favorably to the party indemnified. The overwhelming weight of authority now supports the proposition that the rule of *strictissimi juris,* which was in force when private persons, without fee or premium, executed bonds, is not applicable to the contracts of surety companies who become sureties for profit, and it is well settled by the weight of authority that the contracts of surety companies are now to be construed by the courts like other insurance contracts, that is most strongly in favor of the party sought to be indemnified. It is said on page 47 of Vol. 14, R. C. L.,

as follows: "As to the construction to be given to the provisions of an indemnity or fidelity bond given by a surety company, which differs materially from the old bond of indemnity it is well settled that where the contract has been drawn by the surety and its provisions are susceptible of more than one construction, all of which are consistent with the objects for which the contract was executed, that construction must be adopted which favors the party indemnified."

It is also said in the note on page 513, of Volume 33, L. R. A. (N. S.) as follows: "The overwhelming weight of authority supports the proposition that the rule of *strictissimi juris* by which the rights of uncompensated sureties are determined, is not applicable to the contract of profit; that their business is essentially that of insurance; and that therefore their rights and liabilities under their contracts will be governed by the laws of insurance."

We beg most respectfully to direct the court's attention to the theory that McCormick received the money *colore officii,* and that his surety is therefore liable for the misappropriation. There is practically no conflict in the authorities, and little or no doubt, that a surety on an official bond is liable for the acts of the principal done *virtute officii.* There is, however, some conflict in the authorities on the question of whether a surety is liable on an official bond for acts of the principal *colore officii.* Our own court however, has definitely and positively adopted and approved that line of authorities which holds the surety liable for the acts of the principal done *colore officii. State* v. *McDaniels,* 78 Miss, 1, *Lizana et al.* v. *State,* 69 So. 292. In *Lizana et al* v. *State, Supra,* the court in recognizing the great contrariety of opinion on this subject says, speaking through Justice COOK: "Without regard to the rule in other jurisdictions, this court has held that official acts, like the acts in the present case, are actionable."

And then quoting from *State* v. *McDaniel, supra,* he says: "What the magistrate does *colore officii,* his sureties are liable for.

We take it from the authorities of our own court, therefore, that if McCormick received the money *colore officii,* the surety is liable. Let us see, therefore, if McCormick received the money *colore officii.* The distinction between the two classes of acts, that is, acts *virtute officii* and acts *colore officii,* is thus stated by PRATT J., in *Peoples* v. *Schuyler,* 4 N. Y. 187:

"Acts done *virtute officii* are where they are within the anthority of the officer, but in doing them he exercises that authority improperly, or abuses the confidence which the law reposes in him; whilst acts done *colore officii* are where they are of such a nature that his office gives him no authority to do them."

The particular claim of the surety company in this case is that McCormick's office "Gave him no authority" to receive this money. The proof abundantly shows, however, that while it was true there was an ordinance directing Rivers to deposit this money direct in the city depository, and while it was also true that there was no express authority for McCormick to receive the money, at the same time the ordinance in question had never been observed by the city, or enforced by it, and on the contrary, it had been the general understanding that the city clerk should handle this fund. The city clerk had handled the fund, and was handling the fund at the time the surety company made this bond on which suit was brought. The city clerk, McCormick, when he assumed the duties of this office assumed this as one of the duties incident to the work of the city clerk, and entered immediately upon the performance and discharge of this particular duty. Rivers paid the money to McCormick as city clerk. He paid it to him at his office in the city hall, which was the office of the city clerk. McCormick received it as a city clerk, and received it because he was

a city clerk, and received it under the authority of right which he was assuming as city clerk. After having received it he entered it on his cash book, which was kept by him as city clerk in the city clerk's office, and he deposited the fund as city clerk in the city depository. His entire dealing and connection with the fund was through his office as city clerk, and under color of his office as city clerk. We are free to confess, therefore, that if this money which was admittedly the city's money, was not received by McCormick under color of his office as city clerk, we can conceive of no case in which he could have acted *colore officii.* in contradistinction to his acts done *virtute officii. People* v. *Vanness,* 21 Pac. 554.

Counsel have cited many authorities seeking to support their contention that the surety is not liable in this case. The court will find that the authorities of different states are hopelessly in conflict on the question presented here. Some courts hold that the surety is only liable for acts of the principal done *colore officii* and *virtute officii.* We are relieved, however, of the necessity of examining these various and conflicting authorities from the courts of other states, because our own court has definitely and positively adopted and approved that line of authorities which holds the surety liable for the acts of the principal done *colore officii. State* v. *McDaniels,* 78 Miss. 1; *Lizana et al.* v. *State,* 69 So. 292.

In examining the authorities from our own court cited by counsel, the court will observe that in not a single one of them did the court deny a recovery against the surety merely because the funds were received by the principal *colore officii* instead of *virtute officii,* but in each and every one of the cases cited a recovery against the security was denied either because the express terms of the conditions of the bond prohibited a recovery or because the act of the principal on which a recovery was sought, was outside of and different in nature and separate and distinct from the

official capacity in which the officer was bonded, and was not even an act performed by the officer *colore officii.*

The case of *Lewis* v. *Johnson,* Walker's, page 260, was an action wherein it was sought to hold the clerk's sureties liable for an act which was outside of and separate and distinct from the official capacity in which he was bonded, and was not even an act performed by him *colore officii.* The case of *Matthews* v. *Montgomery,* 25 Miss. 150, is likewise a case where the act for which recovery was sought against the sureties and outside of and different in nature and separate and distinct from the official capacity in which the officer was bonded, and could not even be deemed an act performed by the clerk *colore officii.*

The case of *Furlong* v. *State,* 58 Miss. 717, was a suit brought in behalf of the state against Furlong and his sureties on the said Furlong's bond as sheriff, seeking to recover certain money which Furlong had collected by preferring false claims under a statute which gave him an allowance for feeding and caring for prisoners. The court will note particularly that this was not a case where funds were paid to the principal to be paid over by the principal to another party. It was a case wherein the sheriff had simply "padded" his claims for feeding prisoners and had thereby received for his own account money out of the county treasury. He did not receive the money for the purpose of paying it to another; his bond was conditioned that he should "punctually pay over all monies coming into his hands by virtue of said office (sheriff) to the party or parties entitled thereto according to law." The decision of the court in this case wherein a recovery against the surety was denied, was based not on the ground that the money which the sheriff collected on such false claims was received by him *colore officii,* and not *virtute officii,* but it was based on the ground that such act of the sheriff collecting such money was not within the express terms of the condition of the bond. In other words, the decision was based on the ground that

the condition of the bond by its express language prohibited a recovery against the surety because the court said that the bond was intended only as security for such money as might be paid to the sheriff or entrusted to him to be paid over by him to another. In rendering its decision on this ground, the court said:

"It is plain that the clause in the condition of the bond to pay over all monies coming into his hands by virtue of said office to the party entitled has in contemplation money coming into the hands of the sheriff as, a collector or custodian for another than himself, and has no reference to money which he might collect for himself. The remaining stipulations of the conditions have reference only to the performance of official duty by the sheriff. The matter complained of in this connection is neither within the terms of the condition of the bond, nor within the contemplation of the law which provided it."

The distinction between Furlong case and the case at bar is apparant. The case of *Brown* v. *Phillips,* 6 Smedes & Marshall, 51, is one wherein suit was brought against the sheriff and his sureties on his official bond to recover the amount of a bill for advertising which the publisher claimed the sheriff had incurred in procuring advertisements of sales for taxes. Again the court will observe that this is not a case as is the case at bar where money was paid to the principal to be paid over by the principal to another party. Neither is it a case where the principal received money under color of his office to be paid over by the principal to another party. It has no application whatever to the facts of the case at bar. In the case cited the court held that the condition of the tax collector's bond prohibited a recovery against the surety.

The distinction, therefore, between this case and the case at bar, will be readily obvious to the court. We respectfully submit, therefore, that on an analysis of the foregoing cases cited by counsel, no one of them appears

to be in point here. All of the cases are supported by an entirely different state of facts, and are decided on a wholly different ground from the ground on which recovery is sought in the case at bar. No one of the cases cited by counsel is in conflict with the cases of *State* v. *McDaniels, supra,* and *Lizana et al.* v. *State, supra,* which latter cases plant our court in support of the theory that the surety must be held for acts of the principal done *colore officii.*

We respectfully submit, therefore, that under any one of the theories discussed, the surety should be held liable, and this case should accordingly be affirmed.

SYKES, J., delivered the opinion of the court.

The appellee, Yazoo City, filed suit in the chancery court of Yazoo county against Hugh W. McCormick and the appellant company, surety on the official bond of McCormick as city clerk of Yazoo City. A decree was rendered in favor of the city for the sum of nine hundred, forty-two dollars and fifty-nine cents and the surety company alone prosecutes this appeal to this court.

The bond made by the appellant company is in the usual form of surety bonds. The condition of the bond alleged to have been breached is that portion reading as follows:

"That if the said Hugh W. McCormick shall from the 5th day of December, 1910, well and faithfully perform all the duties of the said office."

The bill alleges that the said McCormick failed and neglected and refused to account for and pay over to the complainant the sum of nine hundred forty-two dollars and fifty-nine cents. The testimony in the lower court was conflicting as to whether or not the city clerk, as a matter of fact, received this money; but the chancellor decided this fact in favor of the appellee. We will therefore state the facts as found by the chancellor.

During the life of the bond in suit, and while McCormick was the city clerk, a Mr. Rivers, the superintendent of the street car line in Yazoo City, which line belongs to the city, from time to time paid over to McCormick, city clerk, the amount of nine hundred forty-two dollars and fifty nine cents. This amount McCormick failed to turn over to the city, but appropriated it to his own use. The testimony in the case shows that the only moneys which could be collected by the city clerk were those due as city tax privilege licenses. At the time of the alleged defalcation there was an ordinance of the city, duly and legally adopted, and in full force and effect, section 3 of which is as follows:

"All moneys collected by the said Rivers shall be paid into the city depository, to the credit of the street railway fund, and no money shall be paid out except upon warrant of this board."

One of the banks had been regularly selected as a city depository. Despite the above ordinance, the testimony shows that Mr. Rivers had ignored the same, with the knowledge of the city officials, and had made a practice of turning over to the city clerk the street railway money.

It is the contention of the appellant surety company that, since the payment of this money by the superintendent of the street car line to the city clerk was in direct violation of the city ordinance in effect when these payments were made, and since the only moneys which could be collected by the city clerk were those for privilege tax licenses, then this money was not paid to the clerk either *virtute officii* or *colore officii,* and, therefore, it was not in the contemplation of the surety on this bond, and that it could not be held liable for this money.

After a most careful consideration of the case and all of the authorities cited in the briefs of learned counsel, and also of other authorities not cited, we are of the opinion that the surety company cannot be held liable. We do not think there was any real or apparent authority

vested in McCormick, the city clerk, to receive these moneys, and this fact was well known to Mr. Rivers when he paid the same to the clerk. It is the contention of appellee that the money was paid to the city clerk under color of his office. A careful examination of all the authorities in Mississippi, and those which have fallen under our observation in other states, however, leads us to the conclusion that before the bondsmen can be held in a case of this character there must at least have been some apparent authority for the receipt of the money by the official whose bond is in suit. In *Adams, Revenue Agent,* v. *Williams,* 97 Miss. 113, 52 So. 865, 30 L. R. A. (N. S.) 855, Ann. Cas. 1912C, 1129, the moneys came into possession of Williams by virtue of his being the treasurer of the levee board. In the case of *Lewis* v. *State,* 65 Miss. 468, 4 So. 429, it was the duty of the circuit clerk to issue witness certificates under certain circumstances. He had the real authority to issue these certificates in proper cases; he therefore had apparent authority to issue any witness certificates, and the forged certificates in that case were therefore issued under his apparent authority or *colore officii.* In the case of *Adams, Revenue Agent,* v. *Saunders,* 89 Miss. 799, 42 So. 602, 119 Am. St. Rep. 720, 11 Ann. Cas. 327, Saunders was the tax collector of Oktibbeha county, and had the apparent authority to collect the taxes therein collected by him. These taxes were therefore collected by him *colore officii.* In the case of *State* v. *McDaniel,* 78 Miss. 1, 27 So. 994, 50 L. R. A. 118, 84 Am. St. Rep. 618, the mayor was acting within the apparent scope of the authority of his office, in the line of his official duty. His action was merely in excess of his jurisdiction, and, for that reason, what he did was done *colore officii.* The same rule was re-announced and affirmed in the case of *Lizana* v. *State,* 109 Miss. 464, 69 So. 292.

Under the above ordinance it is perfectly clear that the city clerk had no more apparent authority to receive this money from Rivers than did the city marshal or any other

city official. He had no more right to receive it than a circuit or chancery clerk would have to go out and collect taxes. In the case of *Matthews* v. *Montgomery,* 25 Miss. 150, a suit against the sureties on the official bond of the clerk of Madison county, wherein it was alleged that the clerk had collected certain fees ·belonging to the sheriff, the court, in part, said:

"The only question made is whether the action can be maintained on the bond. The bond is conditioned that the clerk shall faithfully perform those duties required of him by law. It is no part of his duties to collect or receive the dues of other officers of the court. He is not in such case the officer of the law to receive the fees, or the agent of the officer for that purpose, but only the agent of the party paying."

See,. also, *Lewis* v. *Johnson,* Walk. 260; *Furlong·* v. *State,* 58 Miss. 717; *Brown* v. *Phipps,* 6 Smedes & M. 51; *Brown* v. *Mosely,* 11 Smedes & M. 354.

It was held in the case of *Brooks Oil Co.* v. *Weatherford,* 91 Miss. 591, 44 So. 928, that where a judgment debtor pays money to the sheriff in order to satisfy a judgment, but before any execution has been placed in the hands of the sheriff, this constituted no payment of the judgment. The court, in part, said:

"When the payment was made to the sheriff, he was simply the agent of Weatherford, and, if he did not pay it over, Weatherford must look to him for it."

In the case of *Alcorn* v. *State,* 57 Miss. 273, it was held that the sureties on the bond of a chancery clerk are not liable for money received by him as a commissioner, though his appointment as such commissioner was by virtue of his office as chancery clerk. See, also, *Denio* v. *State,* 60 Miss. 949. The case of *San Luis Obispo County* v. *Farnum,* 108 Cal. 562, 41 Pac. 445, is similar in principle to the case under consideration:

"A cause of action is stated against Farnum, independently of the allegations relating to the bond which

may be treated as surplusage. That the money in question, having been collected by the tax collector for licenses, belonged to the county, is not questioned; but that it came to the hands of defendant Farnum as auditor is a conclusion of law wholly unsupported by the facts found. There is no provision of law authorizing the auditor to receive it, nor any authorizing the tax collector to pay over such moneys to him, or to any one except the county treasurer. Having received the money, it was Farnum's duty to pay it over to the treasurer; but such duty did not arise out of his office, nor was it at all different from the duty which would have rested upon him to pay it over had he been a plain citizen, not holding any county office. Farnum did not even receive the money *colore officii,* for under no circumstances was he authorized or required by law to receive it. The condition of the bond sued upon is not that Farnum should be personally honest, or pay his personal debts, or discharge those private duties and obligations which he may have assumed; but the condition is that he 'shall well and faithfully perform all official duties required of him by law.' The 'official duties' here specified are the duties required by law of the county auditor, and none other.''

The overwhelming weight of authority is in line with the decision above quoted. Before an act is done under color of office there must be an appearance of right given under the law to do the act; or, in other words, there must be at least apparent authority for the doing of the act. When the city ordinance provides the only way for the handling of the street car fund, then there certainly can be no apparent authority for the payment of this fund to the city clerk. Rivers directly violated the ordinance when he did so. The city clerk violated the ordinance when he received the money. It was the duty of Rivers to have paid this money into the city depository. He failed so to do, but by paying it over to the city clerk he thereby merely

made the clerk his agent to pay the money into the proper depository.

The money was not paid to McCormick either by virtue of his office or under color of his office. Before the surety can be held liable on this bond it is necessary for the city to prove that the money came into the hands of the city clerk either *virtute officii* or *colore officii*, and this the proof fails to show. The decree of the lower court is reversed, and a decree will be entered here in favor of the appellant.

*Reversed, and judgment here.*