Robertson, State Revenue Agent, *v.* Sanders *et al.*

[96 South, 750. No. 23445.]

(Division A. June 5, 1923.)

1. Municipal Corporations. *Surety on bond of mayor-commissioner held liable only for misappropriation of funds coming into hands by virtue of his office.*

Where the official bond of the mayor-commissioner of a municipality is conditioned for the faithful performance by such mayor of "all the duties of his said office," there is no liability of the surety on said bond for any funds received and misappropriated by such mayor-commissioner, except those coming into his hands by virtue of his said office, and this is true, even though, when said bond was executed, it was known to the surety company that such mayor-commissioner, acting for the municipal clerk and tax-collector, would receive funds properly collectible by those officers.

2. Municipal Corporations. *In action to hold surety liable on bond of mayor-commissioner it must be averred that funds misappropriated were received in official capacity.*

In an action to hold the surety liable on such bond for funds received and misappropriated by a mayor-commissioner. where such officer is charged to have received a certain amount of municipal funds, part of which he received by virtue of his said office, and part by acting for the municipal clerk and tax-collector, no cause of action is stated. unless it is expressly averred that the funds or some part thereof received in his official capacity as mayor-commissioner were misappropriated and unaccounted for.

3. MUNICIPAL CORPORATIONS. *Mayor-commissioner held liable for all funds from whatever source coming into his hands for which he fails to account.* -

In such case, although the surety is not liable for any funds received by such mayor-commissioner, except those coming into his hands by virtue of his said office, nevertheless such mayor-commissioner is personally liable for all funds from whatever source belonging to the municipality coming into his hands for which he fails to account, and such misappropriation is sufficiently charged, where it is averred that said mayor-commissioner received so much funds belonging to the municipality, and accounted for and paid over so much, leaving a net shortage of so much, stating the amount.

APPEAL from chancery court of Tallahatchie county.
HON. C. L. LOMAX, Chancellor.

Suit by Stokes V. Robertson, State Revenue Agent, on behalf of the City of Charleston, against J. W. Sanders and another. From an order sustaining separate demurrers to the bill, plaintiff appeals. Affirmed in part, and reversed in part.

*E. D. Dinkins,* for appellant.

If this were a suit upon the bond of a mayor of a city having the ordinary aldermanic form of government and the bill set up, as here, that he had assumed the office of city clerk and tax collector, and as such, was a defaulter, the demurrer of the surety, U. S. F. & G. Co., should probably have been sustained but for the allegation that the agent of the surety company knew in advance of the

writing of the bond, that throughout the period covered by it, it was the purpose and plan of the mayor and commissioners, that the mayor should act as city clerk and tax collector, as that seems to be the general rule and is supported by the recent case of *U. S. F. & G. Co.* v. *Yazoo City,* 116 Miss. 358, and if the instant case was not clearly distinguishable, from it, it would not be presented for review here. But even if the city of Charleston was operating under the old aldermanic form of government, the bill would be good against demurrer because of the allegation of notice to and acquiescence in the handling of funds by the agent of the surety company, and of the charge that among the items collected were fines imposed by the mayor which it was his duty to handle, and of the item of four hundred dollars collected from Aetna Casualty & Indemnity Company, and, under the familiar rule that where a general demurrer is filed it will be overruled if any part of the bill is found to be good, and the charge that among the items collected and going to make up the shortage, were fines which it was the mayor's duty under the law to collect and account for, the bill should have been held to be good.

But I am more concerned about a ruling here which will point the distinction between the bond of a mayor of a city operating under the aldermanic form of government and one operating under the commission form as in the instant case. If no distinction exists between such bonds, then, as stated above, I think the demurrer of the U. S. F. & G. Company should have been sustained. I hope to be able not only to show a distinction but that the language of the statute will admit of no construction other than the surety company here is bound to the extent of the bond. It will be profitable to keep in mind that the old rule that individual sureties were favorites of the law has been reversed, and corporate sureties, for hire, are held to strict account. See 21 R. C. L. 1160.

The commission form of government under which the

city of Charleston was operating is provided for in chapter 108 of the Laws of 1908 (section 6024 et seq., Hemingway's Code), and section 7 of that act (6031, Hemingway's Code), provided that each of the commissioners shall furnish surety bonds, and "The bond shall be for the faithful discharge of all the duties of the commissioners and against malfeasance in office." Section 6 of the Act (6029, Hemingway's Code), confers on the commissioners the power to appoint all necessary subordinate officers and subjects such officers to their control, and section 11 (6035, Hemingway's Code), provides that the work shall be divided into departments. The bill alleges that Sanders, with the consent of the commissioners, acted as clerk and tax collector and took the salaries provided for the nominal clerks, and this, with the exception of his taking the salaries of the nominal clerks, was clearly within the competency of the commissioners, and upon this view the surety can be bound as the bond, without reference to its securing against malfeasance, stood as security for all such things as the mayor, as one of the commissioners, was authorized, or was permitted by the commission to do. But, as the bond must be read as securing against malfeasance, it is of no moment whether he was personally authorized to collect taxes and discharge the duties of clerk or not. If authorized to do either, the surety is bound without regard to the provision against malfeasance, and if not so authorized he was guilty of malfeasance, and the surety must answer. *Harrell* v. *Gloster,* 77 Miss. 793. For definitions of *"Malfeasance,"* see: Webster: "The doing of an act which a person ought not to do; evil conduct; illegal deed." Words & Phrases (2 Ed.), 200; *State* v. *McClellan,* 85 S. W. 267, 113 Tenn. 616; 3 Ann. Cas. 992, 25 Cyc. 1666.

The action of the court in sustaining both demurrers should be reversed. If Sanders is shown to be debtor to the city, however imperfectly or awkwardly the obligation may be alleged, he should be required to answer,

and there are three sufficient reasons for holding the surety liable, viz: (1) That even tho the bond be technically insufficient to bind the surety, the knowledge and acquiescense on the part of the agent of the special duties to be performed and the manner in which they were to be performed, rendered the obligation binding without reference to the special provision of the statute. (2) That the act of 1908 so enlarges the duties of the mayor-commissioner, that a bond with the ordinary conditions should be held to cover his every act done with the knowledge, or consent, of the commission. (3) That the bond standing as security against malfeasance, must be held to cover every act of the mayor within, or without, his prescribed duties, which tends to render him debtor to the city.

*Wm. M. Hall* and *Woods & Kuykendall,* for appellee.

The bill of complaint was clearly and unquestionably demurrable. There is no averment in the original bill of complaint that the sum of money alleged to have been collected by the said Sanders, acting as the representative and agent of said clerk and treasurer, have not been by said clerk and treasurer paid into the depository, and it cannot be said that the municipality of Charleston has not received every penny of the money which is the subject-matter of this suit.

WHY DID NOT COUNSEL FOR THE COMPLAINANT AMEND THE BILL OF COMPLAINT SO AS TO COMPLY WITH THE SUGGESTION AND RULING OF THE LOWER COURT AND MAKE THE ALLEGATIONS OF THE BILL OF COMPLAINT CLEAR AND SPECIFIC? If all the money belonging to the city of Charleston had been paid into the depository, we care not by whom the payments were made, whether by J. W. Sanders, the clerk, or by the treasurer, the complainant had no cause of action against J. W. Sanders, or surety on his official bond as mayor. By the language and terms of the bond this appellee only undertook and guaranteed that J.

W. Sanders, as mayor, would well and truly perform
the duties of his, the mayor's office, and it is not pretended
that said city ever sought to have this company bond
said mayor for the faithful performance of the duties of
said clerk and treasurer, or ever paid said guaranty com-
pany any sum, large or small, for so doing.   It cannot
be said with any show of reason that it was intended,
or was ever in the mind of either party to this bond that
the surety would undertake and bind itself to guarantee
the faithful performance of the duties of the clerk and
treasurer, or against malfeasance or misfeasance in office,
and this point has been forever put to rest in this state
by the opinion of this court in the *Yazoo case,* 116 Miss.
358.   The "malfeasance" argument is not germane for
the simple and all-sufficient reason that the collection of
monies by J. W. Saunders, for the clerk and treasurer,
was done by him in his individual character, as the agent
and representative of these two officers, and not as a
part of his official duties as mayor.   These acts of J. W.
Sanders in representing the clerk and treasurer were
not acts of omission or commission of any of his mayoralty
duties.   Liability can never be created by fine spun argu-
ments, but created solely from the language or terms of
the bond itself.   Justice DAVIS of the supreme court of
Ohio, in the case of the *State, for the use, etc.,* v. *Griffith,
et al.,* 6 Am. and Eng. Ann. Cas., 917, said: "A public
officer is personally, and may even be criminally liable for
malfeasance in office; but the sureties on his official bond
are answerable only within the letter of their contract
for the unfaithful performance of his official duties, and
not for dereliction outside of the limits of his official
duties."   See also: 22 R. C. L., Public Officers, section
208; *U. S. F. & G. Co.* v. *Young,* 127 Miss. 725, and the
vast array of authorities, including two Mississippi cases,
collected in a note to be· found in 6 Am. and Eng. Ann.
Cas. 919.

*Woods & Kuydendall,* for appellee, Sanders.

The bill of complaint does not allege that Sanders has not paid over the money he collected for clerks Brown and Dabney to them, and it does not allege that Brown and Dabney have not accounted to the town for the same. Simply because he may have wrongfully collected money for the clerk and treasurer and tax collector, which they should themselves have collected and which money was by them afterwards paid into the treasury would not make Sanders liable even though he probably ought not to have done the work of the clerk and tax collector. The town having received the money even though it went by the way of Dabney and Brown, complaint cannot now be made. If counsel relies on any different duties or obligations of the mayor as created by the ordinances of the town under the commission form of government he fails to plead them. "Where the condition of the bond is to perform certain duties prescribed by ordinance and the ordinance is not set out, breaches of the condition cannot be shown without averment of the specific duties required by the ordinance." *Tuscalooso* v. *Lacy,* 3 Ala. 618.

ANDERSON, J., delivered the opinion of the court.

Appellant, Robertson, state revenue agent, filed a bill on behalf of the city of Charleston in the chancery court of Tallahatchie county against appellees, J. W. Sanders, ex-mayor of said city, and the United States Fidelity & Guaranty Company, the surety on his official bond as such mayor, to recover funds alleged to have been collected by said Sanders during his term of office, belonging to said city, and for which he failed to account to the city. Appellees filed separate demurrers to the bill, which were sustained, and appellant given leave to file an amended bill, which leave was declined, and thereupon a final decree was entered dismissing appellant's bill, from which he prosecutes this appeal.

The bill made substantially the following case: The city of Charleston adopted the commission form of govern-

ment, as provided for in chapter 108, Laws of 1908 (Hemingway's Code, sections 6024 to 6037, inclusive). Appellee Sanders was duly elected mayor of said city in 1918, and thereafter, on the 6th day of January, 1919, entered upon the duties of his office, after subscribing to the oath and executing the bond required by law; said bond being in the penalty of twenty-five hundred dollars, with appellee United States Fidelity & Guaranty Company as surety. A copy of the bond is made a part of appellant's bill and is attached as an exhibit thereto. It is payable to the city of Charleston and contains the following preamble and condition:

"Whereas, the above-bounden J. W. Sanders has been duly elected mayor of the town of Charleston, Mississippi, for the term of two years from the 6th day of January, 1919, to the 6th day of January, 1921:

"Now, therefore, the condition of this obligation is such that, if the said J. W. Sanders shall well and faithfully *perform all the duties of his said office,* then this obligation to be void; otherwise, to remain in full force and effect." (Italics ours.)

The bill alleges that, in addition to the mayor-commissioner and the other commissioners, there was a city clerk and a city tax collector, one W. D. Brown holding the former office and F. M. Dabney the latter; that with the consent of said clerk and tax collector and the other municipal authorities appellee Sanders, in addition to performing his duties as mayor, acted for said clerk and tax collector in collecting the municipal taxes and other revenues derived from different sources; that when appellee Sanders made his bond as such mayor the agent of appellee United States Fidelity & Guaranty Company, through whom said bond was made and who was its attorney in fact, knew that said appellee Sanders intended to, in a large measure at least, perform the duties belonging to said clerk and tax collector, and also knew that during his term of office covered by said bond he was in

fact performing in addition to his duties as mayor, in a large measure, those of said clerk and tax collector. The bill charges that appellee Sanders, during his said two-year term of office, in his capacity as mayor and acting for the said city clerk and tax collector, collected for said city in ad valorem taxes, privilege taxes, fines, the city's share of the distribution of school fund received from the state, and other funds from various sources the sum of one hundred and seventeen thousand, one hundred and fifty-seven dollars and twenty-four cents. That of the amount so collected he accounted for and paid over to the said city the sum of one hundred and thirteen thousand, three hundred and sixty dollars, and seventeen cents, leaving (quoting from the bill) "the net shortage of the said J. W. Sanders for which he and the said surety are answerable three thousand, seven hundred, ninety-seven dollars and seven cents." The bill seeks discovery from appellees of the various matters of fact upon which the allegations of the bill are based.

It will be noted that the bond in question only purports to be the bond of appellee Sanders as mayor. The condition is that he will faithfully perform the duties of the office of mayor. No other duties are covered. The question as to appellee United States Fidelity & Guaranty Company is whether or not under this bond there is any liability of the surety, for funds received by appellee Sanders which came into his hands by virtue of his acting as clerk and tax collector of said city.

This question is controlled by *United States Fidelity & Guaranty Co.* v. *Yazoo City,* 116 Miss. 358, 77 So. 152, L. R. A. 1918C, 395. In that case there was a city ordinance requiring all moneys collected by the superintendent of the municipal street car system to be paid into the city depository. In violation of this ordinance said superintendent paid the funds so collected by him to the city clerk, who was only authorized to collect and receive privilege taxes. The court held that the moneys so paid

the city clerk were not funds received by him by virtue of his office as such clerk, that he had no apparent authority to receive said funds, that it could not be said that they were collected by him under color of his office, because there was no appearance of right under the law for him to receive said funds, and that therefore the surety on his official bond was not liable for his defalcation in failing to account. therefor.

The only difference between that case and the present case is that the bill here charges that the surety, appellee United States Fidelity & Guaranty Company, knew that it was the purpose of appellee Sanders as mayor to perform in whole or in part the duties of the clerk and tax collector of said city as well as those of mayor, and that he had done so. We are unable to see how that fact could have any effect on the liability of the surety on the mayor's bond. The bond by its very terms is conditioned alone for the faithful performance by appellee Sanders of his duties as mayor. The bill does not undertake to reform the bond; in fact, it does not charge that the bond fails to embody the real contract entered into by the parties. There is no averment that it was intended and understood by the parties that appellee Sanders was making a bond to cover any other funds than those coming into his hands as such mayor. In fact, the converse is fairly inferable from the language of the bill. It is sought to hold the surety liable alone by reason of the fact that it was known to the surety that appellee Sanders intended to perform other official duties for the city additional to those of mayor.

The bill fails to charge what part of the funds appellee Sanders received in his official capacity as mayor and what portion came into his hands by virtue of acting for the city clerk and tax collector. There is no attempt at separating the funds. And the bill also fails to charge that appellee Sanders received any funds whatsoever as mayor which he had failed to account for and pay over

to the city. There is only a charge that he received so much funds on all accounts and failed to account for a certain portion thereof. This is not sufficient. The bill should have charged with certainty, if the facts justified it, a shortage of funds received by appellee Sanders as mayor and the amount thereof if known, and if not known to be revealed as the result of the discovery feature of the bill.

What has been said, however, with reference to the liability of the surety has nothing to do with the question of the liability of the principal for funds unaccounted for by him. Whether Sanders as mayor received the funds by virtue of his office of mayor or otherwise is immaterial as far as his liability is concerned, provided they were funds belonging to the city of Charleston. The bill charges that appellee Sanders as mayor collected during his term of office by virtue of his office and also by virtue of his acting for the city clerk and tax collector a certain amount of money, and that he only accounted for a certain amount, leaving in the language of the bill "a net shortage" of thirty-seven hundred, ninety-seven dollars and seven cents. The bill might properly have gone further and charged that demand had been made on appellee Sanders for the amount of said shortage and payment had been by him refused. But taking the bill as a whole, including the interrogatories therein for the purpose of discovery, we think it is sufficient to charge appellee Sanders with being indebted to the city of Charleston in the said sum of thirty-seven hundred, ninety-seven dollars and seven cents, funds belonging to said city collected by him which he had failed and refused to pay over to the city.

It follows from these views that the decree of the court below should be affirmed as to appellee United States Fidelity & Guaranty Company and reversed and remanded as to the appellee Sanders.

*Affirmed in part, and reversed in part.*