# De Soto County *v.* Stranahan, Harris & Oatis.

(Division A.  Jan. 5, 1931.)

[131 So. 640.  No. 28785.]

24

Holmes & Bowdre, of Hernando, for appellant.

**Creekmore & Creekmore**, of Jackson, and **E. D. Dinkins**, of Senatobia, for appellees.

**McGowen, J.,** delivered the opinion of the court.

Plaintiffs in the court below, Stranahan, Harris & Oatis, appellees and cross-appellants here, sued De Soto county, appellant and cross-appellee here, on an alleged contract of purchase of a road bond issue amounting to

seventy-five thousand dollars. The declaration alleged a breach of the contract, in that the board of supervisors of the county had sold the bonds to their assignor, and thereafter breached the contract and resold the bonds to another party, alleging in the first count that the county made one thousand two hundred fifty dollars profit on the sale, and that, if the bonds had been delivered according to contract, the plaintiffs would have made a profit in excess of five thousand dollars, and on the second count alleged a profit of the plaintiffs, in the court below, of two thousand dollars. De Soto county pleaded the general issue, and also gave notice under the general issue, which is unnecessary to state here, as same will more fully appear in the statement of facts in this case.

In the court below the case was tried before the judge, without the intervention of a jury, who rendered judgment in favor of the plaintiffs for one thousand two hundred fifty dollars, from which judgment De Soto county filed a direct appeal, and Stranahan, Harris & Oatis filed a cross-appeal therefrom.

On May 7, 1917, the Yazoo delta continuous highway taxing district was organized and created by the board of supervisors of De Soto county in virtue of chapter 173, Laws of 1916. On November 8, 1922, the board of supervisors of said county entered an order on its minutes accepting the bid of Spitzer & Co. and Tigrett & Co., jointly made, for the purchase and sale of the bonds of said road district, of the par value of seventy-five thousand dollars at a premium of seven hundred fifty dollars and the costs of printing the bonds. This bid, and acceptance thereof, for the sale of the bonds was made in anticipation of and prior to an election by the qualified electors of the district, which was rendered necessary by the petition of the electorate and the statutes of the state.

On May 6, 1924, the board of supervisors entered a second order to the effect that, when said bonds had been

issued and duly executed, they should be delivered to Spitzer & Co. on their bid. On October 8, 1924, the board of supervisors, having learned that Spitzer & Co. had gone out of business, passed an order accepting the individual bid of Tigrett & Co. for the purchase of said bonds. Tigrett & Co. did not comply with their bid. At the May, 1925, meeting of the board of supervisors it was ordered that advertisements be made for bids on said bond issue. On June 2, 1925, the said bonds of the said district were sold by the board of supervisors to the Hibernia Securities Company for par and accrued interest with a premium of two thousand dollars.

On April 25, 1924, Spitzer & Co. assigned for a nominal consideration whatever rights they had in the purchase of this seventy-five thousand dollar bond issue to Stranahan, Harris & Oatis. On May 1, 1924, Spitzer & Co. went out of business, dissolved its business, and ceased to exist as such.

The offer to purchase these bonds, or bid, was dated November 7, 1922, and was jointly made by Sidney Spitzer & Co. and A. K. Tigrett & Co., and was approved as a joint bid for the bonds by the order of the board of supervisors, and the order provided that same was to be void if the election failed. The bid stipulated that the bonds were to be dated January 1, 1923, and that one thousand five hundred dollars, in amount thereof, should mature on January 1, 1924, and January 1, 1925.

The record does not show that Tigrett & Co. ever notified the board of supervisors that they had withdrawn the joint bid as accepted, or that they had assigned their interest in said bid to Spitzer & Co. The record discloses that there was considerable litigation over a long period of time prior to and subsequent to the election. The letters in the record written by the assignee plainly show that they felt they had a right to withdraw their bid at any time they saw proper; in fact, at one time they

demanded a return of their cash deposit as earnest money, and the reply thereto shows that the certified check deposited as earnest money was lost. However, the earnest money is not involved in this litigation.

The appellant contends here that the order of the board of supervisors contracting to sell the bonds of the county before an election was held was void; and, being void, the assignment by Spitzer & Co. to Stranahan, Harris & Oatis was of no effect because Spitzer & Co. had nothing to assign, and that the board of supervisors was without power to ratify the order, for the reason that the bid was joint and had to be accepted in its entirety.

On the first proposition, that the board of supervisors was without power under chapter 173, Laws of 1916, to sell the bonds pending and prior to an election authorizing the issuance and sale of the bonds, we are of the opinion that the board of supervisors had no authority to make a binding contract in advance of the authority to issue and sell the bonds. Chapter 173, Laws of 1916, is a special scheme authorizing the boards of supervisors to create road districts for the purposes of constructing and maintaining highways to connect with improved highways of adjoining counties, so as to form a continuous system of improved interstate, intercounty, and interdistrict highways, and for the issuance of bonds for that purpose. The first paragraph of section 2 provides "that before issuing the bonds of the county, county district, supervisors' district or special road district, for such purpose, it shall be the duty of the board of supervisors to publish notice of its intention to issue the bonds of the county, county district, supervisors' district or special road district for that purpose, in a newspaper published in the county and having a general circulation therein, for three weeks next preceding the meeting of the board of supervisors at which such board proposes to issue such bonds." The next paragraph provides

that, if twenty per cent of the qualified electors of the proposed district petition against the issuance of the bonds, the bonds shall not be issued unless authorized by a majority of the electors voting in an election for that purpose.

It is conceded here that the contract relied on, if entered into at all, was prior to any election, and that all parties knew that an election in this particular case must be held. The fourth paragraph of section 2 of the act provides, in effect, that the bonds may be issued by the board of supervisors if the result of the election shows a majority of the votes cast in the election to be in favor of the issuance of the bonds.

Chapter 173 is a special statutory scheme by which the boards of supervisors are controlled and regulated, and its terms must be substantially complied with. At the time this bid was accepted and approved by the board of supervisors, the power of the board of supervisors to issue bonds had been delegated to a higher power, the electorate of a proposed district, who alone had the power to say whether or not the bonds of the district should be issued. This is the plain mandate of the statute. It is not obscure. The board of supervisors was without authority to anticipate the result of an election, they were without authority to receive and act upon any contract with reference to the issuance and sale of bonds which, for aught they knew, might never be authorized. The board of supervisors was compelled to follow the statutory scheme, and, in the language of the statute, when the election became necessary its powers in the premises were suspended; they were exercising special statutory powers with reference to the issuance and sale of the bonds. The applicable part of the statute is in this language: "Should the result of such election or elections show a majority of the votes cast at such an election . . . to be in favor of the issuance of the bonds there-

of, then it shall be the duty of the board of supervisors to proceed to the issuance of the bonds . . . for the purposes aforesaid. . . . The amount of bonds to be issued and sold within this limit shall be fixed and determined by the board of supervisors. Such bonds may be issued and sold all at one time, or in installments, from time to time, as the funds are needed for the construction of such improved highways as are contemplated by the first section of this act." Being a special statutory scheme for the issuance and sale of bonds, the power of the board of supervisors to issue and sell same is statutory, and it exercises only statutory powers. All parties dealing with a board of supervisors must take notice of its powers, and cannot acquire any right that the board then and there did not have the authority to confer by contract on such party. See Board of Supervisors of De Soto County v. Weatherford, 114 Miss. 259, 75 So. 114.

First. The contract was void, and the joint bidders, Spitzer & Co. and Tigrett & Co., acquired no rights under the order of the board of supervisors made before the election. Boards of supervisors are not authorized under this statute to act, except in the manner and at the time provided by the statute. The statute was ignored.

Second. It being determined that the bidder acquired no rights under the alleged contract, prior to the election, is the so-called order of the board of supervisors, subsequent to the election, approving this bid as to one of the bidders effective to constitute a contract enforceable by the assignee, the appellees here, the assignment being made at a time when Spitzer & Co. had no right, title, interest, or estate in so far as De Soto county was concerned? The strongest statement that can be made for them is that they had pending before the board of supervisors an offer to purchase bonds, if we ignore Tigrett & Co., when they made the assignment to the appellees here. In so far as the county is concerned, we

are fully persuaded that Spitzer & Co. had neither interest nor estate to assign on the date of the assignment on which the assignees assert their right to bring this suit. It was simply a bid—an offer to purchase—with no tangible or intangible interest or estate in so far as the county was concerned. It was not susceptible of assignment, because the prior act, being void, amounted to nothing, there was no relation existing between the county and the assignee at the time of the assignment, but counsel for the assignee say there was a ratification. There are two answers to this proposition. The first is, that the proposed contract was not ratified as offered. Tigrett & Co. were wholly ignored, and there is no evidence in this record that Tigrett & Co. had ever notified the board of supervisors of an assignment or withdrawal from the joint offer to contract. There is evidence to show that Tigrett & Co. and Spitzer & Co. had agreed that the former should withdraw from the bid, but the bid was never reshaped or the county notified of such action, so far as this record shows. Second, it is quite clear that Spitzer & Co. were not in existence at the date of the ratification order. The assignment was on April 29th, the order was on May 6th, and Spitzer & Co. ceased to exist on May 1st, and yet, strange to say, this assignment dated April 29th contains the book and page of the minutes of the board of supervisors, which on the date of the assignment was bound to have been a blank page. It is quite clear that Stranahan, Harris & Oatis could not maintain a suit relying upon this assignment as the basis thereof. See 5 C. J. p. 852, section 16.

Counsel for the appellant say that the principle of the "wool that grew on the sheep's back" should be applied to this case. The answer which we make, in language which may not be quite elegant but all-sufficient, is that there was no sheep.

We are of the opinion that plaintiffs in the court below, appellees here, under the circumstances were not entitled to recover anything from the county, and the court below was in error in allowing any recovery, and on direct and cross-appeal the appellant will be entitled to a judgment here.

Reversed, and judgment here for appellant.