STATE OF MISSISSIPPI for Use and Benefit of LEFLORE COUNTY v. FIRST NAT. BANK OF GREENWOOD et al.

No. 6630.

Circuit Court of Appeals, Fifth Circuit.
July 7, 1933.

Rehearing Denied Aug. 14, 1933.

A. F. Gardner, H. Talbot Odom, and R. J. Pettey, all of Greenwood, Miss., for appellant.

Wm. H. Watkins, of Jackson, Miss., W. M. Hamner, of Greenwood, Miss., J. M. Thomas, of New Orleans, La., F. G. Thomas, of Tupelo, Miss., and J. A. Covington, Jr., of Meridian, Miss., for appellees.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Contending that depository bonds executed by the First National Bank of Greenwood as principal, and the appellees, surety companies, as sureties, obligated the sureties to indemnify Leflore county against loss on account of funds deposited in the bank to the credit of the sheriff and tax collector, as well as those deposited in various county accounts to the credit of the county, and that subrogation assignments which the sureties had taken from the county upon payment of the county's accounts, were invalid as gratuitous and without consideration, Leflore county brought this suit to reform and enforce the bonds, and to cancel the assignments.

The District Judge found no ambiguity in the bonds, and, as to the sureties, no mutual mistake in their execution. He thought they plainly and clearly set out the obligations which the sureties had assumed, that they did not extend to securing the funds to the credit of the sheriff and tax collector, and that the sureties had paid all that they were obligated to pay. As to the assignments which plaintiffs sought to cancel, he thought that, since the sureties had paid in full the obligation of their principal for which they had gone surety, there was no equity in the way of their having subrogation, to the extent of the payments, to the position of the creditor. He did not agree with plaintiffs' view that, because the principal still owed the county money on account of the deposits of the sheriff and tax collector, it would be inequitable for the sureties to have subrogation. From the decree entered in accordance with these views, dismissing plaintiffs' bill for want of equity, plaintiff brings this appeal.

The briefs of the parties in a clear, thorough, and exhaustive way present and discuss the applicable statutes and authorities.

From them and from the record, which presents no substantial controversy of fact, we find this to be the situation:

For many years the laws of Mississippi have required county boards of supervisors to designate as county depository some bank in their county in which moneys belonging to the several current funds of the county shall be kept on deposit. These laws, carried forward into the Mississippi Code of 1930, were in effect at the time of the designation of the First National Bank as county depository of Leflore county for 1930, and the execution of the surety bonds sued on in this case. They made provision for the taking of bids for designation as county depository and for the kind of security to be given. They required depositories so designated to receive and distribute county moneys, and provided that any person required to pay money into the county treasury should pay the same to a properly designated depository, that depository to issue receipts therefor, one of which should be filed with the chancery clerk, and the other retained by the person making the payment.[1] These laws required the designated depository to make periodical reports to the board of supervisors of the condition of the various county funds. They fixed the interest to be computed and paid, and generally subjected the depository to the supervision of the chancery clerk, who, since the amendment to the Constitution abolishing the office of county treasurer, is the treasurer of the board of supervisors and acts as county treasurer. These laws provide that the coun-

---

[1] Sections 4349, 4351, and 299 of the Mississippi Code are as follows:

Section 4349: "When any payment of county funds shall be made into a county depository in pursuance of this chapter, the depository shall give the person making such payment triplicate receipts, specifying the accounts on which the payment is made, one of which shall be immediately mailed to the chancery clerk of the county. Any person paying money into the county depositories shall, before paying same, receive a pay warrant from the chancery clerk allowing him to make such deposit, and no county depository shall receive any money unless accompanied by such pay warrant."

Section 4351: "In making a settlement with the county treasury, the tax collector of each county shall pay the amount due the county to a county depository, according to law and the rules of the board of supervisors. The tax collector, in making deposits, shall receive duplicate receipts for the same and shall mail one to the chancery clerk, and the county depository, upon demand, shall issue its official receipt as required heretofore."

Section 299: "It shall be the duty of the county auditor to issue his receipt warrant to any person desiring to pay money into the county treasury, specifying the amount and the particular account on which such payment is to be made, and the fund to which it belongs; but a receipt warrant shall not be credited to the person making such payment, nor be charged to the county depository, until there shall be produced and filed with such auditor a duplicate receipt."

ty auditor shall examine, audit, and settle the accounts of the collector of taxes payable into the county treasury, and they provide that the tax collector shall make reports in writing on the first day of each month to the auditor of public accounts and to the clerk of the board of supervisors of all taxes collected by him during the preceding month, and he shall, within the time fixed by law, pay over all taxes collected to the treasurer and county treasurer respectively.

Section 2 of chapter 315, of the Laws of 1920, provides that all funds belonging to the county in counties having guaranteed depositories shall be paid by the sheriff and tax collector into the legally qualified depository at least once a week, "and the board of supervisors * * * shall, at the time they appoint county depositories, select and appoint a depository for the funds collected by the sheriff and tax collector that do not belong to the funds for which other depositories have qualified."

Chapter 174 (Laws 1922), "An Act to require the payment of interest by banks on funds of the tax collector and to repeal section 2 of chapter 315 of the acts of 1920," to the extent that it was in conflict, required banks to pay interest on taxes collected and deposited, and to pay it into the county treasury quarterly.

In 1930 the board of supervisors of Leflore county, going about to designate a county depository under these laws, and intending to appoint one depository to keep both the funds to the credit and subject to the check of the county and those in the hands and subject to the check of the sheriff, ordered bids to be taken for the privilege of keeping "all county funds, including funds in the hands of the sheriff and tax collector." Pursuant to this order, all banks of Leflore county were notified that "the Board of Supervisors would receive proposals for the privilege of keeping the county funds or any part thereof, for the year 1930, as the Board may desire to place in the bank, and the security proposed to be offered by said banks for the privilege of keeping the funds." The bid of the First National Bank of Greenwood was for "all county funds, including the sheriff's account and any other funds that might come temporarily or permanently into the possession of the county." This bid was accepted by an order of the board, designating the bank as "depository for Leflore County for the year 1930 for all county funds deposited in the bank, including the account of the sheriff and tax collector of Leflore County and all school and drainage district funds."

In support of its bid, the bank tendered four depository bonds signed by the four sureties, appellees in this case. Each bond differed in amount, each was signed by a different surety. These bonds, though varying in some immaterial respects in their description of the funds for which the principal had been designated as depository, in substance bound each of the sureties in the same way. They recited the designation of the bank as depository of the funds and moneys of Leflore county, its board of supervisors, and the treasurer thereof. They were conditioned that the principal should promptly pay all funds and moneys deposited with it on the warrant of the board of supervisors, or other proper officers, and that the principal should well and truly indemnify the obligee from losses which it may sustain by reason of the designation. Following its designation, the bank received into the county funds in the control of the board of supervisors and of the chancery clerk as treasurer, the various county accounts, and also received the funds deposited to the credit of the sheriff and tax collector and subject to his check, and paid interest on all of them. When it closed its doors on December 30, 1930, it had on hand in the various county funds, subject to the check of the county authorities, $108,123.31. It had also on hand funds to the credit of the sheriff and tax collector, and subject to his check, $83,278.71. The sureties, called upon to make good on their bonds, recognized their obligation for all funds carried in the bank in the various county accounts, but denied their obligation for funds carried in the bank to the credit, and subject to the check of the sheriff and tax collector. Each surety paid Leflore county its proportion of the $108,123.31 county funds, and took from the board of supervisors an assignment against the bank to the extent of the amount paid. Each of these instruments recited that it was the intention and purpose of Leflore county to place the surety in the position which the county had occupied at the time of the closing of the bank, to the extent of the sum paid by it. After these things had been done, Leflore county commenced this suit in the chancery court of Leflore county, whence it was removed, to enforce the bonds as covering also the sheriff and tax collector's funds, and to cancel the assignments, upon the claim that they were invalid as executed gratuitously, and therefore constituting gifts of public funds. As originally brought in the chancery court of Leflore county, Miss., the bill attacked the bonds as untrue on their face, in that they did not correctly set out the terms

and conditions under which they were in fact issued, and sought their reformation. It alleged that they had been intended to cover the funds of the sheriff and tax collector, but that, as a result of mutual mistake, they were apparently worthless on their face, and it was necessary to reform them. As to the assignments, it alleged that the attempt of the county to assign to each of the sureties the county's claim against the bank to the extent the surety had paid the county was null and void, for that the assignments undertook to subrogate the surety to the county's position against the principal before the obligation of the principal to the county had been discharged. The prayer was to reform and enforce the bonds, and to cancel the assignments. ·

█ The defendant bank admitted that it had contracted as depository for all of the funds, including those of the sheriff and tax collector, and that it had intended to qualify as such. The surety companies, defendants, denied that the wording of the bonds was the result of mutual mistake, asserted they read as the surety companies had intended them to read, and insisted that the assignments had been properly given. They alleged that they had paid the full amount of the secured obligation of their principal, and were entitled equitably to subrogation. By amendment, complainants added allegations to their bill which contradictorily declared that it was the purpose and intention of the board of supervisors and of the First National Bank, and of all of the defendant surety companies, to protect all county funds of every kind, including those deposited in the bank by the sheriff and tax collector, and that the funds were in fact secured by the bonds; that, if the bonds cannot be reformed, though incorrectly drawn, they nevertheless on their face cover and bind the sureties for the sheriff's funds. It was proven that, though both the board of supervisors and the bank understood and intended that the designation of the bank was for the sheriff's funds, also nothing of this kind was told to the sureties. The applications the bank made to them for the bonds made no mention of the sheriff's account, and neither the order for taking bids, nor the order designating the depository, was ever communicated to them. They did not know that their bonds were expected to secure any funds except those designated on their face, to wit, funds of the county in its control and subject to its check by virtue of office. In short, the evidence makes it plain that no case for reformation is made out, and that, unless the bonds on their face may be construed to cover ·

and protect the county, not only in regard to the funds on deposit in the bank subject to its control and check, but also in regard to the funds of the sheriff which, until received into the depository as county funds, are subject only to his check, the judgment on the bonds is right.

█ We turn then to the controlling question whether the sheriff and tax collector's account was, within the meaning of the bonds, county funds in the possession of the county by virtue of office, or whether these funds were, though belonging to the county, funds of the sheriff and tax collector until he made his report and covered the funds into the county treasury. We think there can be no question but that they were not such county funds. Both the statutes and the evidence as to the actual handling of the funds make it clear that the moneys the sheriff collected were carried to his credit, subject only to his check, and on his personal responsibility until settlement was made with the county and the moneys were covered into the depository as county funds, and into the many different accounts to which they belonged. The chancery clerk, treasurer of the board of supervisors, the president of the bank, and the sheriff all testified that the sheriff's funds were not subject to check or warrant of the county until after the sheriff had made his report to the board of supervisors, had had issued to himself the proper receive warrants, and had distributed the money to the various accounts, then and then only the money passed out of the control of the sheriff and into the control of the board of supervisors and its treasurer.

At the time the bank failed the moneys in the sheriff's account had not been settled for nor had they been distributed to the various county accounts; no receive warrants had been issued; the money was subject to no check but that of the sheriff, and, as long as it stood to his credit, he was, under the laws of Mississippi, personally liable for it as an insurer. State v. Mayes, 54 Miss. 417; Griffin v. Board, 71 Miss. 767, 15 So. 107; Adams v. Lee, 72 Miss. 281, 16 So. 243; Arnold v. State to Use of Itawamba County, 77 Miss. 463, 27 So. 596, 78 Am. St. Rep. 533; Adams v. Saunders, 89 Miss. 784, 42 So. 602, 119 Am. St. Rep. 720, 11 Ann. Cas. 327. Under these circumstances, no fair or reasonable construction of the bonds could distort them into providing coverage for these funds. Plaintiff was right in alleging that the bonds needed reforming if these accounts were to be covered. The District Judge was right in refusing recovery on them.

We think the case stands differently, however, in regard to the assignments, and the claim of the sureties to subrogation. We think it plain that equity does not allow subrogation in this case, because subrogation pro tanto would impair the interest of the county in respect to the unpaid balance due it, and we think it equally plain that the conventional subrogation attempted was without effect. The District Judge, for his twelfth finding of fact, correctly found: "That it was the intention of the First National Bank and the officers of Leflore County, Mississippi, creating the First National Bank as county depository for Leflore County funds for the year 1930 to protect all funds, including those deposited in the name of the sheriff and tax collector of Leflore County, prior to the distribution of same to the various county funds; and that the aforesaid parties believed at the time the bonds of the defendants herein were accepted that same fully protected all funds, including those placed in said depository in the name of the sheriff and tax collector."

This, in connection with his other findings, was a finding that, though the surety became bound for only a part of the debt, the obligation of their principal, the bank, was an indivisible one for all county funds, including those of the sheriff and tax collector. The conclusion that under these circumstances the sureties are entitled to subrogation is in direct conflict with the general rule that one is not entitled to be subrogated to the rights and securities of a creditor until the claim of the creditor against the debtor has been paid in full. Jenkins v. National Surety Co., 277 U. S. 258, 48 S. Ct. 445, 72 L. Ed. 874; Maryland Casualty Co. v. Fouts (C. C. A.) 11 F.(2d) 71, 46 A. L. R. 852; U. S. F. & G. Co. v. Centropolis Bank (C. C. A.) 17 F.(2d) 913, 53 A. L. R. 295; Barton v. Matthews, 141 Ark. 262, 216 S. W. 693, 9 A. L. R. 1594; Harrison v. Harrison, 149 Tenn. 601, 259 S. W. 906, 32 A. L. R. 563.

The imperative force and universal application of these principles is illustrated by the holding in Fidelity & Deposit Co. of Maryland v. Wilkinson County, 109 Miss. 879, 69 So. 865, 870, that section 2959 Mississippi Code, 1930, giving sureties statutory subrogation to all of the rights of the parties in whose favor the security is given, does not change the rule that "the surety who pays the amount called for by the bond does not thereby become subrogated to the rights of the creditor to the prejudice of the balance due the latter."

As to the assignments, it is perfectly plain upon the evidence that no conventional subrogation beyond that equitably due was intended or attempted by them; but, if there were, the attempt fails for want of authority in the board of supervisors to thus gratuitously surrender the rights of the county. Board of Health v. Teutonia Bank & Trust Co., 137 La. 422, 68 So. 748, Ann. Cas. 1916B, 1251; Adams v. First National Bank, 103 Miss. 744, 60 So. 770; Jefferson County v. Grafton, 74 Miss. 435, 21 So. 247, 36 L. R. A. 798, 60 Am. St. Rep. 516; DeSoto County v. Stranahan, Harris & Oatis, 159 Miss. 23, 131 So. 640.

In so far, then, as the decree denies liability on the bonds, it is affirmed. In so far as it denies cancellation of the assignments and permits appellees to be subrogated to the county's position against the bank to the extent of the amounts paid the county, it is reversed, with directions to the court below to enter a decree, canceling the assignments, and denying subrogation.