## AMERICAN SURETY CO. OF NEW YORK v. WESTINGHOUSE ELECTRIC MFG. CO. et al.*

No. 7382.

Circuit Court of Appeals, Fifth Circuit.

Feb. 13, 1935.

*Writ of certiorari granted 55 S. Ct. 657, 79 L. Ed. —.

378

SIBLEY, Circuit Judge, dissenting.

———◆———

J. E. D. Yonge, of Pensacola, Fla., for appellant.

Wm. Fisher, Wm. H. Watson, S. Pasco, and C. J. Brown, all of Pensacola, Fla., for appellees.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The appellant was the surety on a bond in the sum of $3,940, given in pursuance of statute (40 USCA § 270) to secure performance by one Gray of his contract with the United States for drilling a well at the Pensacola Naval Air Station, which contract included the provision that the contractor would promptly make payment to all persons supplying the contractor with labor and materials in the prosecution of the work provided for in the contract. Gray completed the work contracted for, but remained indebted, in the sum of $5,677.85, to appellees, who had supplied materials used in the work contracted for; and Gray was adjudged bankrupt. Appellant appeared in a suit instituted in the court below on the bond, and paid into court the amount of the penalty of the bond, $3,940, which amount was distributed ratably to the appellees, leaving substantial balances still owing by the contractor to the appellees. After the completion of the work called for by the contract, the United States owed the contractor $2,774.23, being the amount of 10 per cent. of estimates, retained pursuant to a provision of the contract. That sum was paid to the trustee of the estate of the bankrupt contractor. In the bankruptcy proceeding the appellees claimed that they were entitled to a lien on that fund and to priority of payment therefrom of the balance remaining due to them; and the appellant asserted the claim that it had a lien on or a prior right to that sum for the repayment to it of the amount of the penalty of the bond which had been paid. The proof of claim filed by the appellant made an exhibit thereto a copy of a contract of indemnity executed to the appellant by the contractor prior to the time of appellant becoming surety on the bond, which indemnity contract contained the provision: "And the Indemnitor further agrees in the event of any breach or default on his part in any of the provisions of the contract covered by said suretyship that the said Surety, as Surety, shall be subrogated to all the rights and properties of the Indemnitor in such contract, and that deferred payments and any and all moneys and securities that may be due and payable at the time of such default, or on account of extra work or materials supplied in connection therewith, or that may thereafter become due and payable on account of said contract, shall be credited for any claim that may be made upon the

said Surety by reason of its suretyship as aforesaid." The appellees filed objections to the claim filed by the appellant. The referee sustained those objections, and denied the claim of priority asserted by the appellant. The court approved that action of the referee.

■ The condition of the above-mentioned bond, after a recital of the making of the above-mentioned contract, follows: "Now Therefore, If the principal shall well and truly perform and fulfill all the undertakings, covenants, terms, conditions, and agreements of said contract during the original term of said contract and any extensions thereof that may be granted by the Government, with or without notice to the surety, and during the life of any guaranty required under the contract, and shall also well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, and if said contract is for the construction or repair of a public building or a public work within the meaning of the act of August 13, 1894, as amended by act of February 25, 1905, shall promptly make payment of all persons supplying the principal with labor and materials in the prosecution of the work provided for in said contract, and any such authorized extension or modification thereof, then, this obligation to be void; otherwise to remain in full force and virtue." The bond, like the statute requiring it, has two purposes: (1) To secure to the government faithful performance of the contractor's obligations to the government; (2) to protect third persons who furnish labor and material to the contractor. The furnishers of labor or material for the work contracted are, like the government, beneficiaries of the bond. Equitable Surety Co. v. U. S. to Use of W. McMillan & Son, 234 U. S. 448, 454, 34 S. Ct. 803, 58 L. Ed. 1394. In the absence of a statute on the subject, furnishers of labor or material to a contractor have the legal status of general creditors. Before the enactment of any federal statute on the subject, it was not unusual for the government to recognize the existence of a moral duty to protect furnishers of labor or material for a public work against dishonest or reckless contractors by requiring the insertion in a contract for such work of a provision requiring payment by the contractor of amounts owing by him to furnishers of labor or material for the work contracted for, or entitling the government to withhold payments to the contractor if he failed to pay promptly those who furnished labor and materials. Greenville Sav. Bank v. Lawrence (C. C. A.) 76 F. 545. It appears from decisions referred to below that the government's observance of that duty in practical and effective ways was the precursor of judicial recognition of an enforceable equitable right of unpaid furnishers of labor or materials for that work in or to a part of the contract price thereof remaining in the possession of the government after the completion of that work by the contractor. Nothing contained in the statute in pursuance of which the bond on which appellant was surety was executed is inconsistent with the government's recognition of the continued existence of a duty to protect furnishers of labor or material, with the result of making such furnishers beneficiaries of the funds withheld by the government. The conclusion that, in the circumstances disclosed in the instant case, the appellees had claims on the fund in question superior to the claim asserted by the appellant is supported by the decision in the case of Henningsen v. United States Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 391, 52 L. Ed. 547. That case was a contest between the surety on the bond of a contractor for a public building and a bank which was the assignee of the contractor; the surety, after the completion of the building by the contractor and his failure to pay amounts owing by him to furnishers of labor and materials for the building, having paid those amounts; and the contractor, pending performance of the contract, having assigned to the bank all payments which were then due, or might thereafter become due, on account of the contract, to secure the payment of a loan made by the bank to the contractor. The subject of the contest was a sum of money in possession of a United States official which was due under the contract after the completion of the building by the contractor. The bond given by the contractor, like the bond on which the appellant was surety, provided for the contractor making prompt payment to furnishers of labor or materials for the work contracted for. The court's opinion contained the statement, made in support of the expressed conclusion that the surety's equity was superior to that of the bank: "It paid the laborers and materialmen, and thus released the contractor from his obligations to them, and to the same extent released the

government from all equitable obligations to see that the laborers and supplymen were paid." Following that statement and a further discussion of the question presented, the court stated the conclusion that the surety by subrogation had a superior claim to the fund in question, without expressly stating to whose rights the surety was subrogated. As the contractor's obligation to the government had been complied with before the surety paid the debts owing to furnishers of labor and materials, there was no right of the government subject to be acquired by the surety by subrogation. The rights subject to be acquired by the surety by subrogation being those possessed by the furnishers of labor and materials, it is a reasonable, if not necessary, inference that the successful contestant's recognized superior right was acquired by subrogation to the rights of the furnishers of labor and material for the building contracted for. With reference to the last-cited case, the following was said in the opinion rendered in the case of Belknap Hardware & Mfg. Co. v. Ohio River C. Co. (C. C. A.) 271 F. 144, 149: "When Henningsen's surety paid up, the United States, the secured creditor, had been satisfied, and had no further claim on the fund, unless it bore the duty to devote the fund to the labor and material claimants; hence the latter proposition must be considered as affirmed. Obviously, the retained fund is devoted to the payment for such labor and material as may be necessary to finish the work after the contractor defaults." As to the fund in court in the instant case, the appellant was not subrogated to any right of the government, as the government had no claim on the fund after the contractor had completed the work contracted for. The appellant was not subrogated to the rights of the appellees, as the debts owing to the latter by the contractor remained unsatisfied. The conclusion that the appellees, in the circumstances disclosed, have an equitable claim on the fund in question, superior to the claim asserted by the appellant, is supported by the decisions in the two cases last cited, and by other federal decisions, including the following: In re P. McGarry & Son (C. C. A.) 240 F. 400; Cox v. New England Equitable Ins. Co. (C. C. A.) 247 F. 955; Alfred Richards Brick Co. v. Rothwell, 18 App. D. C. 516; Exchange State Bank v. Federal Surety Co. (C. C. A.) 28 F.(2d) 485, 488.

■ The assignment and the indemnity agreement under which the appellant claims did not have the effect of subordinating the rights of the appellees to those of the appellant. The contractor being under an implied obligation to indemnify or reimburse the appellant, an express agreement to do so added nothing to appellant's rights. Hardaway v. National Surety Co., 211 U. S. 552, 29 S. Ct. 202, 53 L. Ed. 321; Springfield National Bank v. American Surety Co. (C. C. A.) 7 F.(2d) 44.

■ The appellees being creditors of the appellant's assignor, the insolvent contractor, the appellant's claim is subordinate to those of the appellees for the additional reason that the appellant, the surety of the insolvent debtor, is not, prior to the creditors being fully paid and satisfied, subrogated to rights or remedies the enforcement of which would operate to the prejudice or injury of the creditors. Jenkins v. National Surety Co., 277 U. S. 258, 48 S. Ct. 445, 72 L. Ed. 874; United States v. National Surety Co., 254 U. S. 73, 41 S. Ct. 29, 65 L. Ed. 143; State of Mississippi v. First Nat. Bank of Greenwood (C. C. A.) 66 F.(2d) 9; Peoples v. Peoples Bros. (D. C.) 254 F. 489; Glades County, Fla., v. Detroit Fidelity & Surety Co. (C. C. A.) 57 F.(2d) 449.

The ruling in question was not erroneous. The order or decree appealed from is affirmed.

SIBLEY, Circuit Judge (dissenting).

The amended claim of American Surety Company asserted a prior lien on the fund paid to the contractor's trustee in bankruptcy by the United States. The objections of the materialmen asserted a prior lien in themselves and a right to be paid to the entire exclusion of the surety company; the fund being insufficient to pay all. The referee sustained the objections and ordered the materialmen to be paid first. This is the judgment which is to be affirmed. The surety company is at least a general creditor. The materialmen assert no priority under any provision of the Bankruptcy Act (11 USCA). They must and do assert a lien existing prior to bankruptcy. I see no basis for one without judicial legislation. The majority opinion concedes, and it is undoubtedly true, that without the aid of a statute furnishers of labor and material to a contractor are merely his general creditors. While the Roman law was otherwise, the English law gave them no special right or lien either at law or in equity against the property improved or against the sum to be paid to the contractor. South Fork Canal Co. v. Gordon, 6 Wall. at page 571, 18 L. Ed.

894; Van Stone v. Stillwell, etc., Co., 142 U. S. 128, 12 S. Ct. 181, 35 L. Ed. 961; Prince v. Neal-Millard Co., 124 Ga. 884, 53 S. E. 761, 4 Ann. Cas. 615; 18 R. C. L., Mechanics' Liens, § 1; 40 C. J., Mechanics' Liens, § 3. The insolvency of their debtor does not create any equity in them. Withrow Lumber Co. v. Glasgow Inv. Co. (C. C. A.) 101 F. 863. Many American states have passed statutes giving a lien on varying conditions either against the property improved or against the money to be paid for the improvement. These statutes do not usually include public contracts, because the public property ought not to be sold on execution and because public officials ought not to be harassed by garnishments or their equivalent. The protection most commonly afforded to suppliers of labor and material for public work is to require the contractor to give a bond conditioned for their payment. This was done as respects public work performed for the United States by the Act of August 13, 1894, as amended (40 USCA § 270). Before that act materialmen had no special rights in the money to be paid to the contractor, unless by some provision of the contract. Lawrence v. United States (C. C.) 71 F. 228. I am unable to see that the statute gives them any right except to share with the United States in the penalty of the bond. At first laborers and materialmen shared on a footing of equality with the United States, but a later amendment has postponed them. Nowhere and at no time has the statute given them any right to control the money coming to the contractor or any lien upon it. By the consent of the United States and the contractor expressed in their contract, special rights may arise as to the disposition of the money. An agreement that some of it shall be withheld by the United States was dealt with in the leading case of Prairie State Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412, before the statute was ever passed. At page 233 of 164 U. S., 17 S. Ct. 142, 145, it was said: "A stipulation in a building contract for the retention, until the completion of the work, of a certain portion of the consideration, is as much for the indemnity of him who may be guarantor of the performance of the work, as for him for whom the work is to be performed, that it raises an equity in the surety in the fund to be created." The surety's equity was held to date back to the execution of the contract which required the retention, and thus to be prior to the contesting bank's later assignment. The surety was held to have an original right to be secured by the fund so set apart, and also a secondary equity to be subrogated to the right of the United States to retain it. In Henningsen v. United States Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547, which is mainly relied on in the majority opinion and in Belknap Hardware & Mfg. Co. v. Ohio River Co. (C. C. A.) 271 F. 144, it is not stated whether or not the contract required the retention by the United States of the unpaid money, but one would suppose there was such a requirement because it was declared that Prairie State Bank v. United States, supra, was in point, and that case went wholly upon the contractual segregation of the fund. The court in the Henningsen Case speaks of subrogation, but does not say to whose right the surety became subrogated, and the argument is sought to be made that since the contract was completed the United States no longer had any right when the surety paid out its money, so that the subrogation spoken of must have been to some right of the laborers and materialmen, who therefore must have been held to have a lien. But the headnote in the United States Report states: "In such a case the surety is subrogated to the rights of the contractor, but the bank is not." If that correctly states the ruling, the rights of the materialmen were not at all considered, and the ruling was that the surety, bound since the date of his contract, was subrogated to the right of the contractor to collect the balance due on the completed contract, and the bank's assignment of date later than the contract was inferior, and the bank, being a voluntary lender, had no possible right of subrogation. Such a subrogation would work whether the unpaid balance was retained under the contract as a security for the surety or not, for the contractor's right to payment does not depend on such retention; and it would also seem that if it was so retained the surety would not need any subrogation because he had a direct and original right to be protected by the fund so set apart, it being a trust. Walker v. Brown, 165 U. S. 654, 17 S. Ct. 453, 41 L. Ed. 865; Glades County v. Detroit Fidelity & Surety Co. (C. C. A.) 57 F.(2d) 449, at page 452. The only way to arrive at a lien for the materialmen that I can see is to assume that money retained by requirement of the contract is for the security of them also. This has not yet been authoritatively held, and because of the number of laborers and materialmen might prove embarrassing to government in settling up contracts. The

contract ought clearly to indicate such a purpose. The present contract does .aot. It contains no requirement that suppliers of labor and material be paid. The only reference in the contract to paying them is a provision that additional security on the bond protecting them can be required if the surety furnished should become unacceptable. The contract, like the statute, contemplates only the bond to secure them. The bond, of course, is conditioned to be void if the contractor fully performs the contract and in addition pays promptly all persons supplying labor and materials. If the contractor fails to pay any of them, the surety must pay up to the penalty of his bond, but that is all. This it has done, and the bond and all its obligations are satisfied. The unpaid balances the contractor still owes, but the surety does not; and the contractor owes them because ·of the several contracts of purchase, not because of his bond or his contract with the United States. This contract does provide for the retention, of 10 per cent. of the payments to be made to the contractor, but gives discretion to stop retentions after 50 per cent. of the work is satisfactorily done. 10 per cent. of the contract price is $1,524. Since the work was satisfactorily done, only half of that, $762, was required to be retained. A discretionary retention is admitted to give rise to no rights in the materialmen in Alfred Richards Brick Co. v. Rothwell, 18 App. D. C. 516. It follows that the trust fund is only $762, or at most $1,524. This court has held that money not required to be retained is free money in the hands of the contractor upon which there is no trust or lien even in favor of the surety. Kane, Trustee, v. First National Bank (C. C. A.) 56 F.(2d) 534, 85 A. L. R. 362. I find nothing in this contract to show that the reserved percentages were for the benefit of anybody but the United States and the surety, as held in Prairie State Bank v. United States, but if they were under trust also for the materialmen the trust covers at most $1,524, and not the whole $2,775.25, paid over by the United States.

In my opinion, under this contract and under the federal statute the materialmen have no special rights or lien either on the percentages contracted to be retained or on the free balance, but must be held to have credited the general responsibility of the contractor and the bond taken for their protection. The surety has a direct right, and also a right by subrogation, in respect of the retained percentages. I do not consider

that the indemnity agreement with the contractor contains an intelligible assignment of anything. The surety may be disentitled to have any relief by equitable subrogation until the materialmen are paid in full under principles asserted in Jenkins v. National Surety Co., 277 U. S. 258, 48 S. Ct. 445, 72 L. Ed. 874, and State of Mississippi for Use of Leflore County v. First National Bank (C. C. A.) 66 F.(2d) 9. But that does not prevent an assertion of its direct right to the security of the retained percentages, nor hinder its sharing with the materialmen, all as common creditors, in the bankrupt's general estate. I do not think the judgment totally excluding the surety is correct.