MARTIN v. NATIONAL SURETY CO. et al.

No. 10536.

Circuit Court of Appeals, Eighth Circuit.

Aug. 12, 1936.

Richard S. Bull, of St. Louis, Mo. (Carter & Jones, of St. Louis, Mo., on the brief), for appellant.

J. H. Cunningham, Jr., of St. Louis, Mo. (Otto O. Fickeissen, Banister, Leonard, Sibley & Susman, Blackinton, Reid & Harris, David K. Breed, Felix Cornitius, Cullen, Fauntleroy & Edwards, Curlee & Teasdale, and Sam M. Degen, all of St. Louis, Mo., Roscoe Forth, of Granite City, Ill., and Greensfelder & Grand, Herbert F. Hahn, Frank H. Haskins, Igoe, Carroll, Higgs & Keefe, Wm. T. Keil, J. E. King, Rassieur, Kammerer & Rassieur, E. H. Schwarzenbach, and Frank A. Zeis, all of St. Louis, Mo., on the brief), for appellees.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

SANBORN, Circuit Judge.

Albert C. Tobin (hereinafter referred to as the contractor) on February 12, 1932, entered into an agreement with the United States to construct a post office building at Carlinville, Ill. The contract price of $49,500 was to be paid as the work progressed, upon monthly estimates, subject to a deduction of 10 per cent. to be retained by the government until the completion and acceptance of the work. The contractor's bond was written by the National Surety Company (hereinafter called the surety) through its agent, the appellant, Guy S. Martin. The bond, as required by statute (40 U.S.C. § 270 [40 U.S.C.A. § 270]), provided that the contractor "shall promptly make payments to all persons supplying him or them [the principal] with labor and materials in the prosecution of the work provided for in such contract."

In his application for the bond, the contractor agreed not to assign any payments under the contract and to indemnify the surety for any loss it might sustain; he assigned to the surety "all the deferred payments and retained percentages, and any and all moneys and properties" that might be due him at the time of any breach or default in the contract or that might there-

after become due, to be credited upon any loss sustained by the surety because of the bond; and agreed that, if the surety was required to reserve from its assets an amount to cover any contingent claim or claims arising from his default, he would deposit sufficient funds with the surety to cover such claims. Martin, as agent for the surety, executed this bond, contrary to the instructions of the surety, and the premium was never paid. The surety is now insolvent.

During the construction of the building, the contractor needed financial assistance to enable him to carry on the work, and Martin, who had helped him financially in connection with a prior construction contract, advanced various amounts over a period of several months. By December, 1932, when the building was nearing completion, Martin had advanced to the contractor, for use in constructing the building, an amount in excess of $10,000. The evidence is not entirely clear as to whether all of this money was used in the performance of the contract for the construction of the Carlinville post office. It is safe to say that not all of it was expended for labor and material.

In October, 1932, the surety first received notice that the contractor had failed to pay claims for labor and material. During the following November and December, the surety received further notice of the nonpayment by the contractor of such claims. On December 20, 1932, the contractor called upon the surety. The surety demanded of him that it be given control of the disbursement of retained percentages, deferred payments, and any money due or to become due from the government under the contract, and asked him to execute a power of attorney to it. After promising to consult his counsel and then to bring in the suggested power of attorney, the contractor went to Martin and gave him a power of attorney, which Martin sent to Washington accompanied by a letter from the contractor requesting that checks payable to him be sent to Martin.

When the December, 1932, and January, 1933, estimates, aggregating $10,448.10, were approved by the proper government officer, the contractor sent Martin to Washington to collect this money. At that time the surety did not know that Martin had a power of attorney from the contractor. The amount of these estimates was paid to Martin on February 6, 1933.

The building was then substantially completed, and the government was in possession. There was a balance of $5,700 due the contractor, after deducting the progress payments made to Martin, which balance was the retained percentage, plus a small sum withheld by the government to cover unfinished work.

On February 9, 1933, the day after the surety learned of the payment of the December and January estimates to Martin, it brought this suit in equity to enjoin the payment to Martin or the contractor of the balance still due from the government under the contract, to require that such payment be made to the surety for the benefit of laborers and materialmen, and to compel Martin to pay into court, for the benefit of the surety and of creditors having unpaid claims for labor and material, the $10,448.10 received by him from the government. The court granted a temporary injunction preventing Martin and the contractor from collecting anything more from the government, and directed Martin to deposit with the clerk of the court $9,000 of the $10,448.10 collected by him. Thereafter Martin and the contractor filed their joint answer, admitting that Martin had collected $10,448.10 due upon the December and January estimates, and alleging that Martin had collected it in order to reimburse himself in part for what the contractor owed him; that $10,405.65 of the amount which was due Martin from the contractor was for money advanced in connection with the construction of the building here involved, plus interest upon such advances; that Martin's lien on the proceeds of the contract was at least of equal standing with that of the surety, if the surety had any lien. The defendants (Martin and Tobin) waived any claim upon the balance still due from the government.

On May 2, 1933, the trial court, after finding that the government still owed the contractor $5,700, and that labor and material claims unpaid were in excess of $15,000, entered a decree, (1) making the temporary injunction theretofore issued permanent; (2) authorizing the plaintiff surety to collect the balance due under the contract and to deposit it in court "to abide further orders as to the disposition of said funds"; (3) directing Guy S. Martin to pay $1,448.10 into court "to be deposited by the Clerk of said Court with the $9,000.00 heretofore ordered paid into Court by

the defendant, Guy S. Martin, said deposit to abide further orders as to the disposition of said fund"; (4) dismissing the plaintiff's complaint as against certain other defendants; (5) reserving to the court "the right to enter such further orders and decrees in this cause as may be necessary in the premises"; and (6) taxing costs against the defendants Tobin and Martin.

In January, 1934, the surety petitioned the court for an order fixing the time for filing claims. An order was entered requiring verified claims to be filed on or before March 24, 1934. On that date, Martin filed his "Exceptions, and in the event they are overruled, Proof of Debt, of Guy S. Martin," by which he excepted to the order fixing the time for filing claims, on the ground that he was entitled to the entire fund, but asserted a claim to $10,405.65 in the event his exceptions were overruled. Other claimants filed exceptions to Martin's claim on various grounds, one of which was that the decree of May 2, 1933, was an adjudication that he had no right to the fund or any portion thereof.

The court duly considered Martin's claim, and found that he was entitled to nothing because (1) he was a partner of the contractor and his (Martin's) claim was inferior to those of the laborers and materialmen; (2) his collection of the estimates was a fraud upon the rights of creditors of the contractor, and the contractor's execution to Martin of the power of attorney was a fraud upon the surety and upon those who had furnished labor and material; (3) the claims for labor and material were superior to the claim of Martin and exceeded the fund deposited, and the surety company was insolvent; (4) Martin's hands were not clean, because, in a suit by the Maryland Casualty Company against Martin and Tobin, Martin had testified that of the advances which he claimed to have made to Tobin in connection with the performance of the work here involved the sum of $5,672 covered amounts expended in connection with other work done by the contractor at Havana, Ill.; (5) Martin did not furnish labor or material, but merely loaned money to the partnership enterprise.

Thereupon the trial court entered a decree rejecting Martin's claim and directing the disbursement of the fund in court to claimants whose claims had been allowed. These claims were those of laborers and materialmen.

From this decree, Martin alone appealed, naming as appellees the surety and all claimants whose claims had been allowed.

Some eight claimants, who were non-residents of Missouri and had no attorneys of record, were served with citation on appeal through a trustee appointed for them by the trial court. Appellees contend that such service was insufficient, and that the appeal should therefore be dismissed. It does not appear that the method adopted for securing service was ineffectual or prejudicial. The record does not show whether the claimants so served have appeared generally in this court or not.

The purpose of the issuance and the service of a citation on appeal is to give notice and opportunity to appear. Mattingly v. N. W. Virginia Railroad Co., 158 U.S. 53, 15 S.Ct. 725, 39 L.Ed. 894; Lockman v. Lang et al. (C.C.A.8) 132 F. 1, 4; Mitchell v. Lay et al. (C.C.A.9) 48 F. (2d) 79, 85; Simkins Federal Practice, § 971. The service of such a citation is not a fundamental jurisdictional requirement. Lockman v. Lang et al., supra; Mattingly v. N. W. Virginia Railroad Co., supra; Weinstein v. Black Diamond S.S. Corporation et al. (C.C.A.2) 31 F.(2d) 519; Hunn et al. v. Lewis et al. (C.C.A.8) 25 F. (2d) 271, 272; In re T. E. Hill Co. (C.C.A.7) 148 F. 832; Osage Oil & Refining Co. v. Mulber Oil Co. (C.C.A.10) 38 F.(2d) 396, 398; Galveston H. & N. Ry. Co. v. House et al. (C.C.A.5) 102 F. 112. We think that this appeal should not be dismissed on the ground of the claimed insufficiency of the service of citation on some of the appellees.

It is also contended on behalf of the appellees that the contractor was a necessary party to this appeal. We think he was not. He made no claim to the fund. His answer constituted a disclaimer. He was not substantially affected by the decree appealed from. A nominal party without interest in the judgment or decree appealed from need not join in the appeal. United States Fidelity & Guaranty Co. v. Sweeney et al. (C.C.A.8) 80 F.(2d) 235, 238; Higbee v. Chadwick (C.C.A.6) 220 F. 873; Axelrod v. Osage Oil & Refining Co. et al. (C.C.A.8) 29 F.(2d) 712; Marker, Federal Appellate Jurisdiction & Procedure, p. 153, § 126. Where a decree is against two or more defendants, but several as to one, he may appeal without the other defendants joining and without an

order of severance. Federal Intermediate Credit Bank v. L'Herisson (C.C.A.8) 33 F. (2d) 841, 842, 843; Osage Oil & Refining Co. v. Mulber Oil Co. (C.C.A.10), supra; Hirschfeld v. McKinley (C.C.A.9) 78 F. (2d) 124, 129; Winters v. United States, 207 U.S. 564, 575, 28 S.Ct. 207, 52 L.Ed. 340; Marker, Federal Appellate Jurisdiction & Procedure, p. 153, § 126.

■ It is further contended by the appellees that the interlocutory decree of May 2, 1933, was a final adjudication of Martin's rights to the fund, and that, since he has taken no appeal from that decree, this appeal should be dismissed. The language of the decree of May 2, 1933, is a complete answer to this contention. The court merely directed Martin to deposit the payments in controversy in court "to abide further orders as to the disposition of said fund." The court later considered Martin's claim and the exceptions thereto, and entered the decree appealed from, which is the final decree in this suit. The issues raised by the pleadings were not determined by the interlocutory decree, the purpose of which was obviously to preserve the status quo and to bring into being a fund to abide the final result of the litigation.

■ A decree, to be final for the purposes of appeal, must terminate the litigation of the parties on the merits of the case, so that, if there is an affirmance, the court below will have nothing to do but execute the decree appealed from. Grant v. Phoenix Mut. L. Ins. Co., 106 U.S. 429, 430, 431, 1 S.Ct. 414, 27 L.Ed. 237; Louisiana Nat. Bank v. Whitney, 121 U.S. 284, 285, 7 S.Ct. 897, 30 L.Ed. 961; Norris Safe & Lock Co. et al. v. Manganese Steel Safe Co. (C. C.A.9) 150 F. 577.

■ This brings us to a consideration of the merits of this controversy. The surety paid no claims for labor or material, and furnished no money for the completion of the contract. It had no valid assignment of the progress payments collected by Martin, because of the provisions of 31 U.S.C. § 203 (31 U.S.C.A. § 203), making such an assignment void. See London & Lancashire Indemnity Co. v. Endres (C.C.A.8) 290 F. 98; Spofford v. Kirk, 97 U.S. 484, 24 L.Ed. 1032; National Bank of Commerce v. Downie, 218 U.S. 345, 31 S.Ct. 89, 54 L.Ed. 1065, 20 Ann.Cas. 1116. It therefore had no title to the progress payments which were made to Martin. The most that can be said for the surety is that it had the right to have the money collected by Martin applied to the payment of claims for which the surety would otherwise be liable, and which claims, if paid by it, would give to the surety a superior right to the fund in court by reason of subrogation.

It becomes necessary, then, to determine whether the equitable rights, if any, of the unpaid laborers and materialmen are superior to the rights of Martin.

In Riverview State Bank v. Wentz, 34 F.(2d) 419, 420, this court held that a surety on a contractor's bond, which had paid the claims of materialmen, became subrogated to their rights, and that the rights so acquired by the surety in the retained percentages were superior to the rights of a bank which had loaned money to the contractor for use in the prosecution of the work and had taken an assignment of the "proceeds from estimates to become due said contractor under the terms and provisions of said contract." This holding is the equivalent of a ruling that the rights of materialmen to retained percentages under a contract for public work are superior to the rights of a general creditor of the contractor under an assignment.

In United States Fidelity & Guaranty Co. v. Sweeney et al., 80 F.(2d) 235, 238, Judge Gardner, in delivering the opinion of this court, said: "Laborers and materialmen, however, have an equitable right to payment from funds due a contractor on a public improvement in preference to general creditors. Belknap Hardware & Mfg. Co. v. Ohio River Contract Co. (C.C.A.6) 271 F. 144. The statutory requirement of a bond to protect them is not inconsistent with such equitable rights. American Surety Co. v. Westinghouse Elec. Mfg. Co. (C.C.A.5) 75 F.(2d) 377. There is a recognized equitable right of unpaid furnishers of labor or materials to such part of the contract price as may remain in the possession of the government after the completion of the work by the contractor. Riverview State Bank v. Wentz (C.C.A.8) 34 F.(2d) 419; Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; Farmers' Bank v. Hayes (C.C.A.6) 58 F.(2d) 34; American Surety Co. v. Westinghouse Elec. Mfg. Co. (C.C.A.5) 75 F.(2d) 377. Appellant was bound by contract to pay the claims for labor and material, and upon paying these claims it was entitled to be subrogated to the superior equities of the

laborers and materialmen, and when payment was made its rights related back to the time of making the contracts."

The appellant contends that in that case this court limited "the superior equities of the laborers and materialmen" to retained percentages; but the opinion shows that the fund, the balance of which was there in dispute, had been made up of "retained percentages and deferred payments" [page 237 of 80 F.(2d)], and it is plainly stated that the equitable rights applied to "funds due a contractor on a public improvement." In view of the decision in that case, we think the court below, in the case at bar, could only hold that the rights of laborers and materialmen in the ·funds remaining due the contractor upon completion of the contract were superior to the rights of Martin, who at best was a general creditor and in no better position than the bank in the case of Riverview State Bank v. Wentz, supra. The fact that Martin had actually secured possession of the last two progress payments from the government prior to the suit would not alter the situation. The payments were made to him as attorney in fact for the contractor, after completion of the contract. Martin had full knowledge of all of the facts, and had no better title to these payments than the contractor himself would have had. This court said in United States Fidelity & Guaranty Co. v. Sweeney et al., supra, 80 F.(2d) 235, at page 239: "As long as the percentages held back to secure performance of the contract can be identified and followed, they can and should be subjected in equity to the lien of the security." While the word "percentages" is used, that would constitute no basis for refusing to follow progress payments if in equity these belonged to laborers and materialmen.

There is unquestionably authority for the proposition that laborers and materialmen have no rights superior to those of general creditors of a contractor in anything due the contractor except perhaps retained percentages. Third Nat. Bank v. Detroit Fidelity & Surety Co. (C.C.A.5) 65 F.(2d) 548; Kane et al. v. First Nat. Bank of El Paso, Tex. (C.C.A.5) 56 F.(2d) 534, 85 A.L.R. 362; Fidelity & Deposit Co. v. Union State Bank (D.C.Minn.) 21 F. (2d) 102. See, also, dissenting opinions of Judge Symes in Riverview State Bank v. Wentz (C.C.A.8) 34 F.(2d) 419, 422; of Judge Sibley in American Surety Co. v. Westinghouse Electric Mfg. Co. (C.C.A.5) 75 F.(2d) 377, 380; and of Mr. Justice Roberts in American Surety Co. v. Westinghouse Electric Mfg. Co., 296 U.S. 133, 140, 56 S.Ct. 9, 80 L.Ed. 105. This court has, however, adopted the contrary view, and there is no occasion to indulge in a discussion of opposing authority, which would only have the effect of making what is already confusing more obscure. Much of the confusion comes from the fact that, in deciding the case of Henningsen v. U. S. Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547, the Supreme Court did not make it clear whether the surety, who had paid labor and material claims and whose rights were held to be superior to those of a general creditor holding an assignment from the contractor, was subrogated to the rights of laborers and materialmen or subrogated to the rights of the contractor as of the time the bond was written, and whether, if the surety was subrogated to the rights of laborers and materialmen, such rights extended beyond retained percentages and included all deferred payments due upon the completion of the contract. It is to be hoped that in a proper case the Supreme Court will take occasion to clarify the situation, so that it may be definitely known what equitable rights laborers and materialmen have in addition to their rights under a public contractor's bond, and whether such rights, if any, are limited to retained percentages or apply to progress payments as well. This is important to those furnishing labor and materials for public works as well as to those called upon to make loans to contractors to carry on such work.

In view of the decisions of this court herein referred to, we think it is unnecessary to consider other questions raised in the briefs.

The decree is affirmed.